**Gordon Lee WILKINS, Petitioner-Appellant,**

v.

**Donald R. ERICKSON, Warden, et al., Respondents-Appellees.**

**No. 74-1270.**

United States Court of Appeals, Ninth Circuit.

Nov. 6, 1974.

David J. Patterson, of Montana Defender Project, Missoula, Mont., for appellant.

Robert Woodahl, Atty. Gen., Helena, Mont., for respondents-appellees.

## OPINION

Before CHAMBERS and CARTER, Circuit Judges, and LINDBERG,* District Judge.

JAMES M. CARTER, Circuit Judge.

This appeal is from a denial of a petition for a writ of habeas corpus, under 28 U.S.C. § 2254, following a state conviction. The district court held an evidentiary hearing.

The case is apparently one of first impression in this circuit and raises the following major questions:

1. Is a guilty plea voluntarily and intelligently made under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274 (1969) and cases following, if the defendant at the time of pleading guilty is not specifically advised by the State court judge that by pleading guilty he will waive his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers?

2. Does a post-conviction evidentiary hearing conducted by a federal district court on the question of voluntariness violate the "spirit" of Boykin?

## THE FACTS

Appellant Wilkins, represented by counsel, was brought to trial before a jury in the District Court of Cascade County, Montana, on a charge of murder in the first degree. During the third day of the trial, after twenty-two state witnesses had testified and had been cross-examined. Wilkins requested and received permission to change his plea from not guilty to guilty of murder in the second degree.

Wilkins decided to change his plea following a consultation with his attorneys during which they informed him that the state's next witness would be Miss Linda Matthews. Wilkins' attorneys had learned, and informed Wilkins, that Miss Matthews was prepared to testify that Wilkins was not only present when the crime occurred, but was the person who fatally struck the victim. After being advised of the remote chance of acquittal, the sentences possible under both first and second degree murder, and that the prosecutor probably would not accept a change of plea after Miss Matthews' testimony, Wilkins decided to change his plea.

Prior to accepting Wilkins' change of plea, the State court inquired of him if it was his own free will and wish to change his plea, understanding that he could be sentenced to life in prison. Wilkins answered affirmatively and the plea of guilty was accepted by the court.

Following entry of his guilty plea on September 24, 1969, Wilkins was subsequently sentenced to fifty (50) years in the Montana State Prison. He was later transferred to the South Dakota State Prison pursuant to a contract between Montana and South Dakota for the implementation of the Western Interstate Corrections Compact.

Thereafter, on February 28, 1973, Wilkins filed an application for writ of habeas corpus in the United States District Court for the District of South Dakota, Southern District, alleging that his plea of guilty was not voluntarily and understandingly given because he had not been specifically advised that by pleading guilty he waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers (hereinafter Boykin rights). On March 26, 1973, the court transferred Wilkins' application to the United States District Court for the District of Montana.

The District Court for the District of Montana, following an evidentiary hearing on the allegations raised by Wilkins' application, denied the petition for writ of habeas corpus on December 20, 1973.

The district court decided that the particular language in Boykin, quoted infra, was merely advisory, and conclud-

---

* Honorable William J. Lindberg, Senior United States District Judge, Western District of Washington, sitting by designation.

ed that a plea could be voluntary and intelligent without specific articulation of the three *Boykin* rights, as long as the court, "passing upon the application for a writ, be able to find from the whole record before it, without the aid of presumptions, that a plea of guilty was voluntarily and intelligently made." This appeal followed.

## I

### Boykin Does Not Require Articulation of the Three Rights

 Wilkins relies upon Boykin v. Alabama, *supra*. He contends that since he was not personally advised by the trial judge on entry of his plea that by pleading guilty he was waiving (1) his privilege against self-incrimination, (2) his right to trial by jury, and (3) his right to confront his accusers; that he was unaware of the consequences, and that his plea, therefore, was not voluntarily and intelligently made. Wilkins further argues that the failure of the trial judge to articulate these three rights on the record resulted in a "silent" record which cannot be supplemented by a post-conviction evidentiary hearing. Accordingly, he wants the opportunity to replead.

Wilkins relies on the following language from *Boykin*:

"We cannot presume a waiver of these three important federal rights from a silent record.

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what a plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought." 395 U.S. at 243–244, 89 S.Ct. at 1712. [Footnote reference omitted]

The district court's decision, however, is supported by Supreme Court decisions subsequent to *Boykin* and several cir-

cuits. The rigid interpretation of *Boykin* urged by Wilkins has not been adopted by the Supreme Court in subsequent decisions on voluntariness of guilty pleas. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court citing *Boykin*, upheld a guilty plea as voluntary and intelligent even though defendant had not been specifically advised of the three rights discussed in *Boykin.* The *Brady* Court clarified *Boykin* by stating, "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." 397 U.S. at 747–748 fn. 4, 90 S.Ct. at 1468. In North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), the Court stated that in determining the validity of guilty pleas the "standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea.

Other circuits have considered the application of *Boykin* to state prisoner petitions and have held in accordance with Brady v. United States, *supra*. McChesney v. Henderson, 482 F.2d 1101, 1106 (5 Cir. 1973) (The court alternately held that a subsequent state evidentiary hearing could be considered); Wade v. Coiner, 468 F.2d 1059, 1060 (4 Cir. 1972). *Cf.* Todd v. Lockhart, 490 F.2d 626, 627 (8 Cir. 1974) (A subsequent state evidentiary hearing failed to decide the question of voluntariness. On appeal from denial of a writ of habeas corpus by the district court, its judgment was reversed).

The Ninth Circuit has apparently not passed on the question. Accordingly, we hold that *Boykin* does not require specific articulation of the above mentioned three rights in a state proceeding. Brady v. United States, 397 U.S. at 747–748, 90 S.Ct. 1463 and cases *supra*.

## II

### Boykin is Limited to its Facts and is Distinguished on its Facts from the Present Case

Furthermore, contrary to Wilkins' contention, the factual situation in *Boykin* was totally dissimilar to the factual situation here.

In *Boykin* the record reflected only that upon arraignment on five indictments of robbery, Boykin pleaded guilty to all five indictments. "[S]o far as the record shows, the judge asked no questions of petitioner, concerning his plea, and petitioner did not address the court." 395 U.S. at 239, 89 S.Ct. at 1710. Not only was the trial record silent, but neither the state nor federal courts had held an evidentiary hearing on the plea. The precise holding of *Boykin* was that there was reversible error "because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty." 395 U.S. at 244, 89 S.Ct. at 1713. The opposite situation is presented in the instant case.

The State trial record in the instant case standing alone is substantial evidence that Wilkins was not only aware of the rights discussed in *Boykin*, but was fully aware of the consequence of waiving them. Wilkins' plea, unlike Boykin's, was entered on the third day of a jury trial during which twenty-two state witnesses had already testified and been cross-examined. The jury trial was then recessed to afford Wilkins' two attorneys an interview with the state's next witness, Linda Matthews. Following an out-of-court consultation with his attorneys, during which the import of Miss Matthews' prospective testimony and available options were discussed, Wilkins requested that the court allow him to change his plea to guilty of murder in the second degree. Upon Wilkins return to court, the judge inquired if his change of plea was of his own free will and wish; and, if he was aware that he could receive a life sentence. Wilkins answered in the affirmative to both questions.

Certainly, a more in-depth examination of Wilkins by the State judge, prior to accepting his guilty plea, would have been preferable. Nevertheless, the examination which the judge did conduct —viewed in the context that Wilkins first pleaded not guilty and went to trial by a jury; that after three days of trial by jury, wherein he observed the cross-examination of twenty-two prosecution witnesses, he pleaded guilty—strongly indicates that Wilkins was ignorant of neither his rights nor the consequence of waiving them. In contrast, Boykin pleaded guilty upon arraignment.

## III

### A District Court, if Necessary, May Conduct an Evidentiary Hearing Without Violating the "spirit" of Boykin

Unlike the *Boykin* Court, the reviewing court in the instant case had the benefit of evidence adduced at an evidentiary hearing concerning relevant circumstances surrounding the change of plea. Wilkins' assertion that he did not understand the consequences of his plea is clearly refuted by the following colloquy at the hearing:

[By the court]

Q. What did you think was going to happen when you entered the plea of guilty to the second degree murder charge, Mr. Wilkins?

A. Well, I was informed at the time that I may have to testify against another individual that was charged in this matter.

Q. But in terms of your own case, what did you think was going to happen to it? Did you think you were going to continue with that trial with the jury sitting there and call more witnesses?

A. No.

Q. You knew then that if you plead guilty the trial would end at that moment, didn't you?

A. Well, I didn't know when it would end. I assumed that it would when my guilty plea was entered and taken, that I'd be sentenced, Yes.

Evidentiary hearings have been held proper in determining if a plea of guilty in a state proceeding was voluntarily and intelligently made. McChesney v. Henderson, *supra*, and cases cited therein; Todd v. Lockhart, *supra*; Wade v. Coiner, *supra*. Federal district courts, in a number of cases in this circuit, have held evidentiary hearings on state prisoner allegations of invalid guilty pleas. For example, *see* Reyes v. Wilson, 422 F.2d 1316 (9 Cir. 1970). *See* also Townsend v. Sain, 372 U.S. 293, 322, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and Walker v. Caldwell, 476 F.2d 213, 215–216 fn. 1 (5 Cir. 1973).

Rule 11, Fed.R.Crim.P., of course, does not apply to a plea of guilty in state courts. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) interpreted *Boykin* as applied to pleas of guilty in federal courts. In United States v. Sherman, 474 F.2d 303, 305 (1973), this circuit stated "In short, neither *McCarthy* nor *Boykin* requires that a defendant be specifically advised of all his constitutional rights by the trial court if his plea is to be valid. Nor do we think that due process or Rule 11 impose such a requirement. . . . Requiring a specific waiver of every one [of his constitutional rights] would only sow the seeds for later collateral attack. *See* Boykin v. Alabama, *supra*, 395 U.S. at 244, 89 S.Ct. 1709."

We hold, alternatively, that an evidentiary hearing in the district court is proper, if necessary, to determine if the plea of guilty by a State defendant is voluntarily and intelligently made, and that such a hearing does not violate the "spirit" of *Boykin*.

 The finding of the district court that Wilkins' plea was voluntarily and intelligently made has not been shown to be clearly erroneous and, therefore, cannot be set aside on appeal. Fed.R.Civ.P.

52(a). Knowles v. Gladden, 378 F.2d 761, 766–767 (9 Cir. 1967).

The order of the district court denying Wilkins' petition for writ of habeas corpus is affirmed.