#27037-a-LSW

**2015 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TERRY LEE OLESON,                                    Petitioner and Appellant,

        v.

DARIN YOUNG, Warden,
South Dakota State Penitentiary,                     Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PETER H. LIEBERMAN
Retired Judge
* * * *

STEVEN R. BINGER
Sioux Falls, South Dakota                            Attorney for petitioner
                                                     and appellant.


MARTY J. JACKLEY
Attorney General
Pierre, South Dakota

BETHANY L. ERICKSON
Assistant Attorney General
Sioux Falls, South Dakota                            Attorneys for respondent
                                                     and appellee.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 12, 2015

OPINION FILED **08/26/15**

#27037

WILBUR, Justice

[¶1.] Terry Oleson pleaded guilty to first-degree rape. Oleson petitioned for habeas relief and argued that his plea was unconstitutional because the sentencing court did not properly advise him of his right against self-incrimination or that a guilty plea would waive that right. The habeas court found that Oleson was properly advised of his constitutional rights. We affirm.

## Background

[¶2.] Oleson was charged by indictment on November 29, 2007, with first-degree rape, third-degree rape, and sexual contact with a child under 16 years of age. SDCL 22-22-1(1), -1(3), -7. The State filed a part II habitual offender information. Oleson was arraigned by the Honorable Bradley G. Zell and was advised of his rights, including but not limited to, all three *Boykin* rights. During arraignment, the court specifically advised Oleson of his right against self-incrimination; but the court did not advise him that a plea of guilty would waive that right.

[¶3.] Oleson agreed to plead guilty to first-degree rape in exchange for the dismissal of the remaining charges and the part II information. The court canvassed Oleson at the change-of-plea hearing individually as to his statutory and constitutional rights. Notably, and for purposes of this appeal, the court did not canvass Oleson as to his right against self-incrimination; nor did the court advise him that a guilty plea would waive this right:

> **COURT:** Do you understand by entering a guilty plea, you are giving up certain constitutional and statutory rights?
> **OLESON:** Yes, Your Honor.

**COURT:** You're giving up the right to have a jury trial in relation to these charges?

**OLESON:** Yes, Your Honor.

**COURT:** You're giving up your right to confront and cross-examine witnesses in relation to these charges?

**OLESON:** Yes.

**COURT:** You're giving up your right to call witnesses on your own behalf?

**OLESON:** Yes, Your Honor.

**COURT:** You're giving up your right to make the State prove beyond a reasonable doubt all of the elements of the offense charged against you?

**OLESON:** Yeah.

**COURT:** You're waiving your presumption of innocence by pleading guilty. Do you understand that?

**OLESON:** Yes.

**COURT:** Have you had enough time to discuss this matter with your attorney[?]

**OLESON:** Yes, Sir.

**COURT:** Are you currently under the influence of any alcoholic beverage or controlled drug or substance?

**OLESON:** No.

[¶4.] The sentencing court sentenced Oleson to 70 years in the South Dakota State Penitentiary. Oleson did not file a direct appeal of his conviction or sentence. About five years later, on January 20, 2012, Oleson filed a petition for habeas relief. Oleson alleged (1) that the sentencing court failed to advise him of his right against self-incrimination, (2) the court failed to establish the voluntariness of his plea, (3) the court failed to establish a factual basis for his plea, and (4) that he received ineffective assistance of counsel. The habeas court issued findings of fact, conclusions of law, and an incorporated memorandum opinion. The habeas court concluded that the record reflected that Oleson was aware at the time

of his guilty plea that his rights included the right against self-incrimination, and that he understood that he was waiving *all* of his constitutional and statutory rights including, but not limited to, all three *Boykin* rights. Consequently, the court denied Oleson's writ for habeas corpus relief. The habeas court granted Oleson's motion for certificate of probable cause, allowing him to appeal the issue of whether his guilty plea was a valid waiver of his privilege against self-incrimination. Oleson raises the following issue for our review:

> Whether the habeas court erred in finding that Oleson's plea was constitutional.

**Standard of Review**

[¶5.]        Habeas corpus "is a collateral attack on a final judgment." *Monette v. Weber*, 2009 S.D. 77, ¶ 6, 771 N.W.2d 920, 923 (quoting *Owens v. Russell*, 2008 S.D. 3, ¶ 6, 726 N.W.2d 610, 614-15). Accordingly, "habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights." *McDonough v. Weber*, 2015 S.D. 1, ¶ 15, 859 N.W.2d 26, 34 (quoting *Flute v. Class*, 1997 S.D. 10, ¶ 8, 559 N.W.2d 554, 556).[1] "The petitioner must 'prove he is entitled to relief by a preponderance of the evidence.'" *Id.* (quoting *Vanden Hoek v.*

---

1.     In two recent habeas corpus appeals to this Court, we considered the issue whether the record demonstrated that the defendant entered a constitutionally sufficient guilty plea. *Rosen v. Weber*, 2012 S.D. 15, 810 N.W.2d 763 (holding that the record did not establish that defendant knowingly and voluntarily waived his *Boykin* rights); *Monette*, 2009 S.D. 77, 771 N.W.2d 920 (holding that the record did not establish that defendant voluntarily waived his *Boykin* rights).

*Weber*, 2006 S.D. 102, ¶ 8, 724 N.W.2d 858, 861-62). "'Preponderance of the evidence' is defined as 'the greater weight of evidence.'" *Pieper v. Pieper*, 2013 S.D. 98, ¶ 22, 841 N.W.2d 781, 787 (quoting *L.S. v. C.T.*, 2009 S.D. 2, ¶ 23, 760 N.W.2d 145, 151). "We review habeas factual findings under the clearly erroneous standard and legal conclusions under the de novo standard." *McDonough*, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34 (quoting *Meinders v. Weber*, 2000 S.D. 2, ¶ 5, 604 N.W.2d 248, 252).

## Analysis

[¶6.]    When a criminal defendant enters a plea of guilty, the defendant waives three fundamental constitutional rights: "the privilege against compulsory self-incrimination," "the right to a trial by jury," and "the right to confront one's accusers." *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). The United States Supreme Court stated in *Boykin* that because a criminal defendant waives these three fundamental rights by pleading guilty, "an accused facing . . . imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Id.* at 243-44, 89 S. Ct. at 1712. The Supreme Court proclaimed that it "cannot presume a waiver of these three important federal rights from a silent record." *Id., quoted in Rosen v. Weber*, 2012 S.D. 15, ¶ 8, 810 N.W.2d 763, 765. Similarly, we have stressed that "it is critical not only that a defendant be advised of his rights relating to self-incrimination, trial by jury, and confrontation, but also that the defendant

intentionally relinquish or abandon known rights." *State v. Smith*, 2013 S.D. 79,

¶ 8, 840 N.W.2d 117, 120 (quoting *Monette*, 2009 S.D. 77, ¶ 10, 771 N.W.2d at 924).

[¶7.]          We have acknowledged, however, that "*Boykin* 'does not require the

recitation of a formula by rote or the spelling out of every detail by the trial court[.]'"

*Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (quoting *Nachtigall v. Erickson*, 85

S.D. 122, 128, 178 N.W.2d 198, 201 (1970)). "[S]pecific articulation of the *Boykin*

rights by the trial judge is not an indispensable requisite for the record to establish

a valid plea." *Smith*, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23 (quoting *State v.*

*Moeller*, 511 N.W.2d 803, 810 (S.D. 1994)). Rather, "if the record reflects that a

*Boykin* canvassing occurred, we require only that the 'record *in some manner* shows

the defendant entered his plea understandingly and voluntarily.'" *State v. Bilben*,

2014 S.D. 24, ¶ 11, 846 N.W.2d 336, 339 (quoting *Quist v. Leapley*, 486 N.W.2d 265,

267 (S.D. 1992)). We applied a "two-step approach"[2] in *Rosen* and *Monette* to

determine whether the record reflects that the defendant relinquished his rights.

*See id.* ¶ 19, 846 N.W.2d at 340. We said in *Rosen*, "[T]he totality of the

circumstances analysis is inapplicable when the record reflects that *no canvassing*

---

2.    The majority opinion in *Bilben* recognized that the dissent "present[ed] a
compelling argument that our case law, addressing alleged *Boykin* violations,
has incorrectly strayed from a totality-of-the-circumstances analysis toward
the two-step approach applied in *Rosen* and *Monette*." 2014 S.D. 24, ¶ 19, 846
N.W.2d at 340. We stated, however, that "we must wait for another day to
address this matter" because "the State has not asked us to reconsider our
case law declining to apply totality analysis when no waiver advisement has
been given." *Id.* Similarly, the State in this case does not request that we
reconsider our case law. We therefore adhere to the precedent in *Rosen* and
*Monette*, "awaiting a proper case in which we can also consider the
arguments against the positions argued by [Chief Justice Gilbertson]." *See*
*id.*

regarding a *Boykin* waiver ever took place." 2012 S.D. 15, ¶ 11, 810 N.W.2d at 766 (emphasis added). *See also Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926-27. "In the complete absence of a *Boykin* canvassing, a 'critical step' is missing and the reviewing court does 'not consider the additional factors under the totality of the circumstances analysis.'" *Bilben*, 2014 S.D. 24, ¶ 14, 846 N.W.2d at 339 (quoting *Rosen*, 2012 S.D. 79, ¶ 11, 810 N.W.2d at 766).

[¶8.] There is no dispute in this case that the sentencing court did not advise Oleson during the change-of-plea hearing of his right against self-incrimination or that by entering a guilty plea he would waive that right. The first question, then, under the two-step approach in *Monette* and *Rosen* is whether the absence of this advisement constitutes a "complete absence of *Boykin* canvassing" such that a "critical step" is missing. *See id.* Oleson argues that this case is analogous to our recent cases where we reversed and remanded for resentencing because we held that this first step was missing. *See Bilben*, 2014 S.D. 24, 846 N.W.2d 336; *Rosen*, 2012 S.D. 15, 810 N.W.2d 763; *Monette*, 2009 S.D. 77, 771 N.W.2d 920. However, our decisions in *Monette*, *Rosen*, and *Bilben* are factually distinguishable from the present case.

[¶9.] The issue in *Monette* was whether the plea entered was voluntary in the absence of "*any inquiry* into the voluntariness of a no contest plea, and *thus no record of an effective waiver* of federal constitutional rights[.]" *Monette*, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926 (emphasis added). "No inquiry was made by the sentencing court to determine if the plea was coerced or influenced by threats or promises." *Id.* ¶ 15. In addition, the "court failed to inquire if Monette waived his

constitutional rights." *Id.* ¶ 9, 771 N.W.2d at 924. The absence of that "critical step" led us to conclude that no further inquiry into the totality of the circumstances was necessary to determine that the plea was unconstitutional. *Id.* ¶ 16, 771 N.W.2d at 927.

[¶10.]     In *Rosen*, we again considered whether the defendant's plea was entered voluntarily and knowingly. The sentencing court did not advise Rosen that by pleading guilty "he would waive his right against self-incrimination, his right of confrontation, and his right to a trial by jury." 2012 S.D. 15, ¶ 14, 810 N.W.2d at 767. Nor did the court inquire of Rosen whether he "understood that he would waive those rights by pleading guilty." *Id.* Instead, the court merely advised the defendant that by pleading guilty he would waive his right to "a trial." *Id.* ¶ 3, 810 N.W.2d at 764. We concluded that this was not sufficient. *Id.* ¶ 14, 810 N.W.2d at 767. The record did not reflect a knowing and voluntary waiver of the defendant's *Boykin* rights, and, therefore, we did not analyze the totality of the circumstances. *Id.*

[¶11.]     In *Bilben*, the defendant collaterally attacked a prior conviction for driving under the influence because the sentencing court did not canvass Bilben regarding his waiver of his three *Boykin* rights. 2014 S.D. 24, ¶ 13, 846 N.W.2d at 339. Further, the record indicated that he did not receive any waiver advisement. *Id.* We held, "Because there was a *complete absence* of any *Boykin* waiver advisement . . ., we do not apply the totality-of-the-circumstances analysis." *Id.* ¶ 14 (emphasis added). Consequently, we reversed and remanded for resentencing.

[¶12.]    The common thread in *Monette*, *Rosen*, and *Bilben* is the "complete absence" of any *Boykin* waiver advisement as to each defendant on the right against self-incrimination, the right to confront witnesses, and the right to a jury trial.[3] Therefore, an analysis of the totality of the circumstances would be a nullity. "The habeas court had no basis on a silent record from the sentencing court to determine by a preponderance of the evidence that the plea was [constitutionally sufficient]." *Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926. It follows that complete *Boykin* canvassing is a sufficient, but not a necessary, reason to examine the totality of the circumstances.

[¶13.]    Here, while the sentencing court did not explain the right of self-incrimination to Oleson at the change-of-plea hearing, the court had previously explained this right to Oleson at arraignment.

> **COURT:** You have the right against self-incrimination. What that means is, you have the right to plead not guilty, have the right to have the State prove beyond a reasonable doubt each and every element of the offense charged against you. You do not have to testify. You do not have to put on any evidence

---

3.    The habeas court and the State further relied on *Merrill v. State*, 87 S.D. 285, 206 N.W.2d 828 (1973), for the proposition that the failure to advise Oleson of his right against self-incrimination did not render the plea invalid. In *Merrill*, "the sentencing court failed to specifically advise petitioner of his constitutional right against self-incrimination." *Id.* at 286, 206 N.W.2d at 829. We held "that the court's failure to do so [did] not vitiate the plea where the post-conviction proceedings clearly show that the petitioner was aware of his constitutional rights and that he understood those rights at the time he entered his guilty plea." *Id.* at 291, 206 N.W.2d at 831. While the underlying premise in *Merrill* is similar to the present case—i.e, the mere failure to advise the criminal defendant on one of three *Boykin* rights does not, by itself, vitiate a guilty plea—we acknowledge that *Merrill* was decided under the terms of the now-repealed Post-Conviction Relief Act, *see* SDCL chapter 23-52. *Id.* at 286, 206 N.W.2d at 829. Therefore, *Merrill* is not applicable to this case.

> whatsoever, and if you choose not to testify or put on any evidence, neither the State nor that court can hold that against you.

We have recognized "that a deficiency in explaining the defendant's rights at the time the defendant enters a guilty plea may be overcome with proof that the same judge had adequately explained the rights at an earlier arraignment." *State v. Apple*, 2008 S.D. 120, ¶ 16, 759 N.W.2d 283, 289. "The closer the arraignment explanation is to the guilty plea the more likely the defendant remembers the recitation of rights." *State v. Goodwin*, 2004 S.D. 75, ¶ 17, 681 N.W.2d 847, 854. *See also Garcia v. State*, 2014 S.D. 5, ¶ 16, 843 N.W.2d 345, 351 (21-day interval); *Monette*, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926 (7-day interval); *Stacey v. State*, 349 N.W.2d 439, 441-42 (S.D. 1984) (30-day interval); *Clark v. State*, 294 N.W.2d 916, 919-20 (S.D. 1980) (26-day interval). The same judge in this case presided over arraignment and the change-of-plea hearing and adequately explained the right against self-incrimination at arraignment. Although 70 days elapsed between the two proceedings, the simple fact remains that Oleson was advised at arraignment regarding his right against self-incrimination. The question that arises, then, is whether the fact that Oleson was not advised that a guilty plea would waive this right deprived him of his constitutional right to due process such that relief is necessary.

[¶14.] The record reflects that the sentencing court specifically advised Oleson at the change-of-plea-hearing that a guilty plea would waive his other two *Boykin* rights. That is, the sentencing court advised Oleson of his right of confrontation and his right to a trial by jury, and that a guilty plea would waive

these two rights. While the sentencing court at the change-of-plea hearing did not advise Oleson of his right against self-incrimination or that a guilty plea would waive that right at the change-of-plea hearing, "[s]pecific articulation of the *Boykin* rights by the trial judge is not an indispensable requisite for the record to establish a valid plea." *See Smith*, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23 (quoting *Moeller*, 511 N.W.2d at 810). "*Boykin* 'does not require the recitation of a formula by rote or the spelling out of every detail by the trial court[.]'" *Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (quoting *Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201). *See also Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974) ("Specific articulation of the Boykin rights is not the sine qua non of a valid guilty plea. . . . Boykin does not require specific articulation of the above mentioned three rights in a state proceeding."); *McChesney v. Henderson*, 482 F.2d 1101, 1106 (5th Cir. 1973) ("[N]o rule of criminal procedure was mandated by *Boykin*, and there is no express requirement that specific articulation of the three constitutional rights above mentioned be given to the accused at the time of the acceptance of a plea of guilty . . . ."); *Wade v. Coiner*, 468 F.2d 1059, 1060 (4th Cir. 1972) (footnote omitted) ("We agree that for the plea to stand [a defendant] must have been 'fully aware of the direct consequences' of his plea, but we reject the contention that under . . . the Constitution . . . [a defendant is] entitled to specific monition as to the several constitutional rights waived by entry of the plea."). Therefore, the mere fact that the sentencing court did not explain the right against self-incrimination to Oleson at the change-of-plea hearing—a right that was explained in extensive detail at arraignment—and that a guilty plea would waive this right does not render the

record silent, *see Rosen*, 2012 S.D. 15, ¶ 8, 810 N.W.2d at 765; nor can it be described as a complete absence of canvassing, *see Bilben*, 2014 S.D. 24, ¶ 13, 846 N.W.2d at 339.

[¶15.]     We therefore examine the totality of the circumstances to determine whether Oleson entered a voluntary and knowing guilty plea. To determine whether a guilty plea is voluntary and knowing "as required to satisfy due process requirements, we must look to the 'totality of the circumstances.'" *Apple*, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288 (quoting *Goodwin*, 2004 S.D. 75, ¶ 11, 681 N.W.2d at 852). "In addition to the procedure and in-court colloquy, we look at other factors including 'the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.'" *Monette*, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925 (quoting *Apple*, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288). Here, Oleson argues simply that he did not knowingly enter his plea because the sentencing court did not advise him that pleading guilty would waive his right against self-incrimination. In contrast, the following facts weigh heavily in favor of Oleson entering his plea knowingly and voluntarily: Oleson was 42 years old at the time he pleaded guilty; he was represented by counsel; he pleaded guilty according to the terms of a plea agreement; the circuit court advised Oleson of his right against self-incrimination at arraignment only two months prior; and, most significantly, Oleson entered guilty pleas in no fewer than six previous criminal prosecutions.

[¶16.]     Other circumstances also support the conclusion that Oleson knowingly entered his plea. At Oleson's change-of-plea hearing, the sentencing

court said, "Do you understand by entering a guilty plea, you are giving up certain constitutional and statutory rights?" The sentencing court then proceeded to ask Oleson if he understood that pleading guilty would waive his rights to a jury trial and to confront adverse witnesses. It is difficult to conclude that an adult defendant—one represented by counsel and well-versed in the consequences of pleading guilty—did not understand that pleading guilty and pleading not guilty were mutually exclusive. The sentencing court's reference to two of the three *Boykin* rights that had been previously explained to Oleson at Oleson's arraignment lends further support to the conclusion that the sentencing court's reference to "certain constitutional and statutory rights" informed Oleson that pleading guilty would also waive his right against self-incrimination. Consequently, the habeas court did not err when it concluded that Oleson failed to establish by a preponderance of the evidence that he did not knowingly and voluntarily enter his plea.

[¶17.]    Affirmed.

[¶18.]    ZINTER, Justice, and KONENKAMP, Retired Justice, concur.

[¶19.]    GILBERTSON, Chief Justice, concurs in result.

[¶20.]    SEVERSON, Justice, concurs with a writing.

[¶21.]    KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.

GILBERTSON, Chief Justice (concurring in result).

[¶22.]     As it did in *Bilben*, 2014 S.D. 24, 846 N.W.2d 336, the Court today declines to revisit the propriety of the two-step approach that evolved out of *Monette*, 2009 S.D. 77, 771 N.W.2d 920, and that the Court adopted in *Rosen*, 2012 S.D. 15, 810 N.W.2d 763. *See supra* ¶ 7 n.2. Although I concur in the Court's decision to deny Oleson habeas relief, I write separately because I adhere to my dissenting opinions in *Rosen* and *Bilben*. The two-step approach to reviewing the constitutionality of a defendant's guilty plea employed in those cases and by the Court today equates the absence of a *Boykin* canvassing with the absence of evidence establishing the voluntariness of a plea. Furthermore, although the Court reaches the correct result today, it does so by applying this two-step approach in contravention of the long-standing burden of proof imposed on habeas petitioners.

## Analysis

[¶23.]     *1.     The two-step approach equates the absence of a* Boykin *canvassing with the absence of evidence establishing voluntariness.*

[¶24.]     Quoting *Rosen*, 2012 S.D. 15, ¶ 11, 810 N.W.2d at 766, the Court today says, "The totality of the circumstances analysis is inapplicable when the record reflects that no canvassing regarding a *Boykin* waiver ever took place." *See supra* ¶ 7. Although I acknowledge that we have been consistently divided on the issue since *Rosen*, I continue to reject the Court's "recent direction taken . . . away from a totality-of-the-circumstances review of guilty pleas and toward a two-step approach[.]" *Bilben*, 2014 S.D. 24, ¶ 35, 846 N.W.2d at 345 (Gilbertson, C.J., dissenting). This approach is inconsistent with *Boykin* itself, as well as our own cases prior to *Monette*.

[¶25.]        In *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), the United States Supreme Court identified "[s]everal federal constitutional rights . . . involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." *Id.* at 243, 89 S. Ct. at 1712. These include the right against self-incrimination, the right to a jury trial, and the right of confrontation. *Id.* A court may not "presume a waiver of these three important . . . rights from a silent record." *Id.* However, "*Boykin* does not require specific articulation of the above mentioned three rights in a state proceeding." *Wilkins*, 505 F.2d at 763; *see also Wade*, 468 F.2d at 1060 ("[W]e reject the contention that under . . . the Constitution . . . [a defendant is] entitled to specific monition as to the several constitutional rights waived by entry of the plea."). In other words, "no rule of criminal procedure was mandated by *Boykin*, and there is no express requirement that specific articulation of the three constitutional rights above mentioned be given to the accused at the time of the acceptance of a plea of guilty[.]" *McChesney*, 482 F.2d at 1106. Instead, a circuit court's acceptance of a defendant's guilty plea should be upheld if the "record affirmatively show[s] that the plea was *knowing and voluntary*." *See Parke v. Raley*, 506 U.S. 20, 29, 113 S. Ct. 517, 523, 121 L. Ed. 2d 391 (1992) (emphasis added). Such a determination is made "by considering all of the relevant circumstances." *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) (per curiam) (citing *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)).

[¶26.]        Our own case law largely mirrors the federal analysis. Although the complete absence in the record of "any inquiry into the voluntariness [or

knowingness] of a [guilty] plea . . . renders the plea unconstitutional[,]" *Monette*, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926, "specific articulation of the *Boykin* rights by the trial judge is not an indispensable requisite for the record to establish a valid plea[,]" *State v. Beckley*, 2007 S.D. 122, ¶ 10, 742 N.W.2d 841, 844 (quoting *Moeller*, 511 N.W.2d at 810). "The *Boykin* advisements are not the only mechanism by which a plea taking court can insure the intelligent entry of a guilty plea." *Quist*, 486 N.W.2d at 267. "It is sufficient when the record *in some manner* shows the defendant entered his plea understandingly and voluntarily[,]" *Beckley*, 2007 S.D. 122, ¶ 10, 742 N.W.2d at 844 (quoting *Moeller*, 511 N.W.2d at 810); i.e., when the record demonstrates "that the accused *was aware, or made aware*, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea[,]" *Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201 (emphasis added) (quoting *In re Tahl*, 460 P.2d 449, 456 (Cal. 1970) (en banc)). Thus, for decades, "[i]n determining whether a plea [was] voluntary, we consider[ed] the 'totality of the circumstances.'" *Monette*, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925 (quoting *Apple*, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288).

[¶27.]     In 2009, this Court diverged from *Beckley*, *Moeller*, *Quist*, *Nachtigall*, and other similar cases in our *Rosen* decision. In *Rosen*, we reviewed the constitutionality of a guilty plea entered by a defendant who "was not advised or asked whether he understood that by pleading guilty he would waive his right to trial by a jury, his right to compulsory process, and his right against self-incrimination." 2012 S.D. 15, ¶ 3, 810 N.W.2d at 764. This Court determined that "by accepting the . . . plea without a *Boykin* canvassing, 'the sentencing court failed

to make critical inquiries and determinations when the inquiries were most significant—when the defendant changed his not guilty plea to a plea of guilty.'" *Id.* ¶ 9, 810 N.W.2d at 766 (quoting *Monette*, 2009 S.D. 77, ¶ 13, 771 N.W.2d at 925-26). Because the circuit court had not fully canvassed the defendant regarding his *Boykin* rights, this Court declined to determine whether the defendant's plea was actually entered knowingly and voluntarily under the totality-of-the-circumstances. *Id.* ¶ 11, 810 N.W.2d at 766 (quoting *Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926-27).

[¶28.]     At the heart of our ongoing disagreement is a misperception of our historical approach to reviewing the constitutionality of a plea: that a totality-of-the-circumstances analysis is not appropriate when the record is silent regarding the voluntariness of a plea. The better view is that such analysis is appropriate in *every* case, whether silent regarding a *Boykin* canvassing or voluntariness in general. On one hand, consider a totality-of-the-circumstances analysis in the absence of relevant circumstances—i.e., the totality of *no* circumstances. On the other hand, consider the refusal to conduct such analysis because of a record silent on voluntariness. When there are no circumstances establishing voluntariness to consider, the result in either case is the same: the impossibility of concluding that the plea was entered knowingly and voluntarily. While the result is the same, however, this artificial distinction and its resulting conditional application of totality analysis opened the door to equating the absence of evidence establishing voluntariness with the absence of canvassing on *Boykin* rights. Although the presence or absence of a *Boykin* canvassing is certainly relevant to the ultimate

determination of voluntariness—and in some cases, may be very persuasive—such evidence is merely one circumstance among the totality that might establish that a defendant knowingly and voluntarily pleaded guilty.

[¶29.]    In *Bilben*, this Court conceded that "[t]he dissent . . . presents a compelling argument that our case law, addressing alleged *Boykin* violations, has incorrectly strayed from a totality-of-the-circumstances analysis toward the two-step approach applied in *Rosen* and *Monette*." 2014 S.D. 24, ¶ 19, 846 N.W.2d at 340. Nevertheless, the Court declined to abandon the two-step approach in order to "await[] a proper case in which [the Court] can also consider the arguments against the positions argued by the dissent." *Id.* The Court takes the same position today. *See supra* ¶ 7 n.2. However, this case is distinguishable from *Bilben*: while Bilben necessarily did not have the opportunity to respond to arguments raised in that dissent, Oleson has had such an opportunity. Additionally, the State raised the issue in this case. Quoting *Smith*, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23, the State argues in its brief that "[s]pecific articulation of the *Boykin* rights by [the] trial judge is not an indispensable requisite for the record to establish a valid plea." Again quoting *Smith*, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23, the State continues, "Instead, 'the record *in some manner* must show the defendant entered his plea understandingly and voluntarily.'" Finally, citing *Monette*, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925, the State argues that the totality of the circumstances should "determine whether Oleson understood that he was waiving all three *Boykin* rights by entering a plea of guilty[.]" This analysis stands in stark contrast to the two-step approach articulated by this Court in *Rosen*, where it said, "[W]hen there

is no record showing that the sentencing court conducted a *Boykin* canvassing, the habeas court *has no basis* upon which it may find that the sentencing court obtained a voluntary and valid waiver of the defendant's *Boykin* rights." *Rosen*, 2012 S.D. 15, ¶ 10, 810 N.W.2d at 766 (emphasis added). Thus, even if it doesn't explicitly ask, "Will you reconsider *Rosen*," the State clearly invites us to revisit the issue by attacking the substance of the two-step approach.

[¶30.] Furthermore, there is no indication in *Monette* or *Rosen* that the defendants in those cases explicitly asked the Court to reconsider 40 years of prior cases—such as *Beckley, Moeller, Quist, Nachtigall,* and others dating back to *Boykin*—that consistently affirmed our use of the totality-of-the-circumstances analysis in cases like this. Notably, we never overruled these prior cases. Therefore, an abandonment of the two-step approach would be, at worst, an unrequested correction to an unrequested deviation. I see little point in continuing to wait for the State to formally request that we resolve a conflict in case law of our own making.

[¶31.] Despite my disagreement with the Court's application of the two-step approach in this case, I agree with the Court's conclusion that the totality of the circumstances makes clear that Oleson understood pleading guilty would waive his right against self-incrimination.

[¶32.] 2. *The Court applies a lower burden of proof than that normally required of a habeas petitioner.*

[¶33.] We have consistently stressed that "we limit our review of a habeas appeal 'because it is a collateral attack on a final judgment.'" *McDonough*, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 33-34 (quoting *Vanden Hoek*, 2006 S.D. 102, ¶ 8, 724

N.W.2d at 861). Habeas corpus "deals only with such *radical* defects as render the proceeding or judgment *absolutely void*." *Acker v. Adamson*, 67 S.D. 341, 347, 293 N.W. 83, 85 (1940) (emphasis added). As such, "habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in *certain* cases whether an incarcerated defendant has been deprived of *basic* constitutional rights." *McDonough*, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34 (emphasis added) (quoting *Flute*, 1997 S.D. 10, ¶ 8, 559 N.W.2d at 556). Mere "[e]rrors and irregularities in the proceedings of a court having jurisdiction of the person, subject matter and power to decide questions of law, are not reviewable though they may have been grounds for reversal on direct appeal." *State ex rel. Ruffing v. Jameson*, 80 S.D. 362, 366, 123 N.W.2d 654, 656 (1963).

[¶34.] Even if habeas review is appropriate in this case,[4] the Court's application of the two-step approach contravenes the burden of proof established for

---

4. As the Court points out, we have previously entertained habeas appeals involving challenges to the constitutionality of guilty pleas. However, entertaining a habeas appeal is not synonymous with holding that the content of the appeal is the proper subject of a habeas petition. Moreover, whether habeas corpus is appropriate is highly dependent on the facts of each individual case. "[W]e look at the full course of the proceeding which culminated in the challenged judgment of conviction to ascertain whether, *when so viewed as a whole*, it can reasonably be said that it so offends against the settled notions of fairness and justice . . . as to fail to amount to due process of law." *State ex rel. Baker v. Jameson*, 72 S.D. 638, 644, 38 N.W.2d 441, 444 (1949) (emphasis added). In *Rosen* and *Monette*, the State only answered the petitioners' arguments on the merits; the State did not further assert that habeas relief was inappropriate because the error—if there was any—did not rise to the level of a jurisdictional defect. Likewise, the State has not raised this argument in the present case.

habeas actions. "[T]he judgment of a court carries with it a presumption of regularity." *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S. Ct. 1019, 1025, 82 L. Ed. 1461 (1938). As the Court notes, it is Oleson who is required to "prove he is entitled to relief *by a preponderance of the evidence.*" *McDonough*, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34 (emphasis added) (quoting *Vanden Hoek*, 2006 S.D. 102, ¶ 8, 724 N.W.2d at 861-62); *see also Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926 ("The petitioner in a habeas action carries the burden of proving an involuntary plea *and* that his constitutional rights were violated." (emphasis added)). "Where a defendant . . . acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right . . . ." *Johnson*, 304 U.S. at 468-69, 58 S. Ct. at 1025. Yet, under the burden of proof applied by the Court today, "the defendant can . . . prevail by alleging that the judge failed to utter specific advisements, regardless of the surrounding circumstances and without claiming actual coercion or misunderstanding or ignorance of the rights being waived." *Bilben*, 2014 S.D. 24, ¶ 37, 846 N.W.2d at 346 (Gilbertson, C.J., dissenting).

[¶35.]     Although the lack of a *Boykin* canvassing can certainly evidence an unknowing plea, such evidence is not dispositive unless it constitutes "the greater of weight of evidence." *L.S. v. C.T.*, 2009 S.D. 2, ¶ 23, 760 N.W.2d 145, 151 (quoting *Gross v. CT Mut. Life Ins. Co.*, 361 N.W.2d 259, 269 (S.D. 1985)) (defining the preponderance standard). It is not sufficient that a circuit court fails to advise a defendant that pleading guilty will waive his rights against self-incrimination, to a

jury trial, and to confrontation; in an appropriate habeas petition, a petitioner must instead prove by a preponderance that his plea, *in actuality*, was not knowing. Thus, while the Court reaches a totality-of-the-circumstances analysis in the present case, it does so only because it concludes there was not "a complete absence of canvassing." *See supra* ¶ 14. The same analysis—applied in a subsequent habeas petition—would grant relief to a petitioner able to prove the absence of a complete *Boykin* canvassing, even if the greater weight of evidence proves he knowingly entered his plea.

[¶36.]     Even if I generally agreed with the two-step approach, the Court's application of it in this case is inapposite because this is a habeas action and not a direct appeal. The Court's analysis should be as simple as this: Oleson's simple assertion that the circuit court failed to inform him of the individual effect of waiving his right against self-incrimination does not establish by the greater weight of evidence that he did not knowingly enter his plea. Therefore, granting habeas relief is not appropriate.

**Conclusion**

[¶37.]     Our pre-*Rosen* decisions firmly establish that a *Boykin* canvassing is not a necessary condition of conducting a totality-of-the-circumstances analysis as the Court maintains. *Beckley*, 2007 S.D. 122, ¶ 10, 742 N.W.2d at 844 (quoting *Moeller*, 511 N.W.2d at 810); *Quist*, 486 N.W.2d at 267. However, I agree that the greater weight of evidence tends to show that Oleson was fully aware of the consequences of pleading guilty and the rights he would waive in doing so, regardless of any asserted deficiency in the circuit court's script. Consequently,

Oleson has not met his burden as a habeas petitioner of proving by a preponderance of the evidence that he did not knowingly waive his right against self-incrimination. Therefore, I concur in result.

SEVERSON, Justice (concurring).

[¶38.]     In this Writ of Habeas Corpus proceeding Oleson contends that he was not specifically advised of his right against self-incrimination at his plea hearing on February 13, 2008, and from this he argues he did not waive his rights, which constituted a constitutional rights violation sufficient to deny the court jurisdiction and warrant the habeas writ.

[¶39.]     This Court has on many occasions addressed the necessity for the record to show that a guilty plea has been made voluntarily and knowingly as addressed by *Boykin*, 395 U.S. 238, 89 S. Ct. 1709.  Our decisions include the often cited cases of *Apple*, *Goodwin*, *Logan*, and *Nachtigall*.  *Apple*, 2008 S.D. 120, 759 N.W.2d 283; *Goodwin*, 2004 S.D. 75, ¶ 11, 681 N.W.2d at 852; *Logan v. Solem*, 406 N.W.2d 714 (S.D. 1987); *Nachtigall*, 85 S.D. 122, 178 N.W.2d 198.  More recently the cases of *State v. Woodard* and *Smith* have addressed the issue.  2014 S.D. 39, 851 N.W.2d 188; 2013 S.D. 79, 840 N.W.2d 117.  I do not agree that in *Monette* we adopted a two-step approach in determining whether a plea is knowing and voluntary.  *See Bilben*, 2014 S.D. 24, ¶ 19, 846 N.W.2d at 340; *Rosen*, 2012 S.D. 15, ¶ 9, 810 N.W.2d at 766.  *Monette* did not establish a two part analysis, nor did *Boykin*.

[¶40.]     *Monette* does not require specific articulation of the three rights noted in *Boykin* as "there is no constitutional requirement that the trial court employ a

particular litany to validate a guilty plea." *Stacy v. Solem*, 801 F.2d 1048, 1050 (8th Cir. 1986). What we must examine is whether the record as a whole shows a voluntary and intelligent plea with knowledge of the consequences and waiver of federal constitutional rights. The United States Court of Appeals for the First Circuit aptly described the duties of trial courts and appellate courts when accepting and reviewing pleas when it stated:

> With scant recognition of its dual audience, *Boykin* simultaneously speaks to judges who accept guilty pleas and judges who later review challenges to the constitutional adequacy of those pleas, either on direct appeal or in collateral proceedings. *Boykin* reminds trial judges that a defendant's plea of guilty "must be based on a 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.'" *Boykin* reminds judges reviewing challenges to the constitutional adequacy of a plea proceeding that due process requires that the record of the proceeding contain sufficient evidence to support the trial court's decision to accept the plea. [*Boykin*, 395 U.S.]at 243, 89 S. Ct. [at 1712] ("We cannot presume a waiver . . . from a silent record."); *see Brady v. United States*, 397 U.S. 742, 747 n.4, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) ("The new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.").

*United States v. Ward*, 518 F.3d 75, 81 (1st Cir. 2008) (citations omitted) (footnotes omitted).

[¶41.] The failure to advise on waiver of a *Boykin* right is not necessarily a silent record establishing a constitutionally infirm plea. We have explained: "Specific articulation of the *Boykin* rights by the trial judge is not an indispensable requisite for the record to establish a valid plea." *Moeller*, 511 N.W.2d at 810. "'[T]he record *in some manner* must show the defendant entered his plea understandingly and voluntarily.' . . . '[T]he trial court must be able to determine

from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted.'" *Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (citations omitted). Our totality-of-the-circumstances approach considered, "[i]n addition to the procedure and in-court colloquy, . . . other factors including 'the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.'" *Monette*, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925 (quoting *Apple*, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288); *see also Goodwin*, 2004 S.D. 75, ¶ 11, 681 N.W.2d at 852.

[¶42.] In this habeas action, Oleson does not contend that he was coerced in any manner into pleading guilty. Instead, he contends that failure by the court to specifically state that he would be waiving his right to self-incrimination by pleading guilty is an error which in itself renders his plea unconstitutional. The circuit court, when a plea was entered, asked if Oleson understood that, "by entering a guilty plea, you are giving up certain constitutional and statutory rights?". Oleson responded "Yes." The court specifically inquired into whether Oleson was giving up the right to: a jury trial, confronting and cross-examining witnesses, calling witnesses, making the State prove all elements of the offense beyond a reasonable doubt, and his presumption of innocence. At arraignment he was given a full advisement of rights. This is not the completely silent record which we encountered in *Monette*, where there was no inquiry as to the voluntariness of the plea or waiver of rights. *Monette*, 2009 S.D. 77, ¶ 15, 771 N.W.2d at 926.

#27037

[¶43.]    Further, in this habeas action Oleson carries the burden of proving that his plea was not knowing, intelligent, and voluntary.  Due to the circuit court's failure to specifically advise him that he was waiving his right regarding self-incrimination, Oleson contends that the plea was not voluntary and knowing.  However, at the habeas trial[5] Oleson admitted he knew he would be required to talk about the facts in the case with the court and answer questions from the person writing the presentence investigation.[6]  Therefore, I concur.

---

5.    Regarding a habeas action, the ninth circuit has held: "We hold, alternatively, that an evidentiary hearing in the district court is proper, if necessary, to determine if the plea of guilty by a State defendant is voluntarily and intelligently made, and that such a hearing does not violate the 'spirit' of Boykin."  *Wilkins v. Erickson*, 505 F.2d 761, 765 (9th Cir. 1974).

6.    The following colloquy occurred:

> **The State:**  "So you knew that by pleading guilty you'd have to come in and talk about the facts of this case with the Judge?"
>
> **Oleson:**   "Yes."
>
> **State:**  "All right.  You knew that you'd have to admit to certain facts of this case in court?"
>
> **Oleson:**  "Yeah."
>
> **State:**  "You knew that if you plead guilty you would be asked questions about what happened by the Court?"
>
> **Oleson:** "Yes."
>
> **State:**  "And you'd also be asked questions about what happened by the person writing that presentence report?"
>
> **Oleson:** "Yes."