#25050-r-GAS

**2009 SD 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MITCHELL JAMES MONETTE,                    Petitioner and Appellant,

v.

DOUGLAS WEBER, Warden of the
South Dakota State Penitentiary,           Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE VINCENT A. FOLEY
Judge

* * * *

MANUEL J. de CASTRO, Jr.
de Castro Law Offices, PLLC
Madison, South Dakota                      Attorneys for petitioner
                                           and appellant.


LAWRENCE E. LONG
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                       Attorneys for respondent
                                           and appellee.

* * * *

CONSIDERED ON BRIEFS
ON MAY 26, 2009

OPINION FILED **08/19/09**

SEVERSON, Justice.

[¶1.]     Mitchell Monette appeals the habeas court's rulings that his no contest plea was voluntary, intelligent and knowing; that he received effective assistance of counsel; and that denial of a firearms expert did not violate his constitutional rights.

## FACTS

[¶2.]     On October 28, 2003, Monette's then wife Cindy returned home intoxicated. An altercation ensued, which ended with Cindy receiving disfiguring facial injuries from a gun shot. Monette was arrested on October 29, 2003, and counsel was appointed to represent him. Monette was indicted on November 5, 2003, with Count 1: Aggravated Assault (SDCL 22-18-1.1(2)) and Count 2: Attempted First Degree Murder (SDCL 22-16-4 and 22-4-1). He was arraigned on November 17, 2003, at which time he was fully advised of his statutory and constitutional rights. Monette pleaded not guilty to both counts.

[¶3.]     On March 1, 2004, the State filed a new indictment charging Monette with Count 1: Aggravated Assault (SDCL 22-18-1.1(5)); Count 2: Aggravated Assault (SDCL 22-18-1.1(2)); and Count 3: Attempted First Degree Murder (SDCL 22-16-4 and 22-4-1). The State also filed a habitual offender information. On this date, Monette was arraigned on the new indictment and the habitual offender information. He was again informed of his rights and pleaded not guilty to all counts.

[¶4.]     On March 8, 2004, Monette entered a change of plea pursuant to a plea agreement. The sentencing circuit court in Lake County, with Judge Tucker

presiding, was informed that Monette would plead no contest to Count 1 of the indictment and admit to being a habitual offender. In exchange, the State agreed to dismiss all other charges. The sentencing court then set forth the elements the State would have to prove in Count 1 and the habitual offender information, which Monette acknowledged he understood. Then the court stated: "Now, I've gone through, I guess, multiple times with you and advised you of all the rights that you have, both your constitutional and statutory rights. Do you have any questions concerning any of these matters?" Monette responded that he had no questions. The sentencing court advised Monette of the maximum possible sentence he could receive upon an admission of Count 1 and the habitual offender information, and that a plea of no contest still counted as a conviction and was subject to the maximum possible penalty. Monette indicated he understood and responded he had no questions before entering his plea. Monette pleaded no contest to Count I and admitted to the habitual offender information. The State provided a factual basis. On March 22, 2004, Monette was sentenced to twenty-five years in the state penitentiary.

[¶5.] Monette filed a petition for writ of habeas corpus on August 27, 2004, and a hearing was held on March 31, 2006, before Judge Steele. A direct appeal was filed. Monette therefore requested that the writ be dismissed without prejudice until the direct appeal was over. An amended petition for writ of habeas corpus was filed on November 24, 2007, and a hearing occurred on December 31, 2007, before Judge Foley. Ultimately, the habeas court denied the writ on October 30, 2008. Monette appeals, raising the following issues:

1. Whether the habeas court erred in finding Monette's plea constitutional.

2. Whether the habeas court erred in finding Monette was provided effective assistance of counsel.

3. Whether the habeas court erred in finding Monette's due process rights were not violated even though he was denied a court-appointed firearms expert.

## STANDARD OF REVIEW

[¶6.]        Our standard of review for habeas decisions is well established:

Our review of habeas corpus proceedings is limited because it is a collateral attack on a final judgment. The review is limited to jurisdictional errors. In criminal cases, a violation of the defendant's constitutional rights constitutes a jurisdictional error. The [petitioner] has the burden of proving he is entitled to relief by a preponderance of the evidence.

The findings of facts shall not be disturbed unless they are clearly erroneous. A claim of ineffective assistance of counsel presents a mixed question of law and fact. The habeas court's conclusions of law are reviewed de novo.

Owens v. Russell, 2007 SD 3, ¶6, 726 NW2d 610, 614-15 (quoting Vanden Hoek v.

Weber, 2006 SD 102, ¶¶8-9, 724 NW2d 858, 861-62).

### *Constitutionality of Plea*

[¶7.]        Monette entered not guilty pleas on two occasions: the first on

November 17, 2003, and the second on March 1, 2004. Monette does not contest

that at those hearings he was fully advised of his constitutional rights and that the

sentencing court inquired and ultimately determined the not guilty pleas were

willingly and voluntarily entered.

[¶8.]        A change of plea hearing was held on March 8, 2004. Monette's

counsel set forth the terms of the plea agreement providing Monette would plead no

contest to Count 1 of the indictment (aggravated assault alleging physical menace)

and admit to the habitual offender information. In exchange, the State would

dismiss all other charges. Thereafter, the following exchange occurred:

> COURT: The [c]ourt did just go through with you, on the indictment, what the State would have to prove in Count 1, specifically that on or about October 28th of 2003, in Lake County, South Dakota, you did attempt by physical menace with a deadly weapon, to put Cynthia Monette in fear of imminent serious bodily harm. Do you understand what the State would have to prove against you?
>
> MONETTE: Yes, sir.
>
> COURT: Also, the State would have to prove every element of that offense beyond a reasonable doubt. If you are found guilty of that charge, the State would have to prove every element contained in the part 2 information for habitual offender beyond a reasonable doubt. Do you understand what the State would have to prove on that?
>
> MONETTE: Yes, sir.
>
> COURT: Again on that, the State would have to prove that on or about June 24th of 2002, in Hughes County, South Dakota, you were convicted of one count of possession of a controlled substance, a class 4 felony. Do you understand what the State would have to prove in the habitual offender information?
>
> MONETTE: Yes, sir.
>
> COURT: Now I've gone through, I guess, multiple times with you and advised you of all the rights that you have, both your constitutional and statutory rights. Do you have any questions concerning any of these matters?
>
> MONETTE: No, sir.
>
> COURT: The maximum sentence possible for Count 1 of the indictment upon admission of the habitual offender information would be 25 years in the South Dakota State Penitentiary and/or a $25,000 fine. Do you understand the maximum possible sentence which could be imposed?

MONETTE: Yes, sir.

COURT: Prior to entering a plea, do you have any questions?

MONETTE: No sir.

COURT: Finally, your attorney advised that you do wish to enter a plea of no contest. Do you understand that that would still count as a conviction of that charge of aggravated assault against you?

MONETTE: Yes, sir.

COURT: That it still bears with it the same maximum possible sentence, whether you plead guilty or no contest to that aggravated assault charge. Do you understand that?

MONETTE: Yes, sir.

COURT: And that if you plead no contest, the [c]ourt will ask the State to give a factual basis for this offense. I will then ask your attorney if you are contesting the facts as related by the State. If you are not contesting those facts, the court -- if the court establishes a factual basis, would enter a finding that there is a factual basis for the plea to this charge. Do you understand that?

MONETTE: Yes, sir.

COURT: Okay. To the charge in the indictment then for the offense of aggravated assault, how do you plea?

MONETTE: No contest.

COURT: To the habitual offender, alleging that you have one prior felony offense, do you admit or deny that?

MONETTE: I admit it, sir.

COURT: Okay. . . . [The court proceeded to find a factual basis and schedule a sentencing date.]

[¶9.]     Before accepting the plea, the sentencing court made no inquiry to determine if the plea was entered voluntarily. Furthermore, during this exchange,

the sentencing court failed to inquire if Monette waived his constitutional rights. Based on these deficiencies, Monette maintains his plea was unconstitutional. We agree.

[¶10.] In *Boykin v. Alabama*, 395 US 238, 242, 89 SCt 1709, 1712, 23 LEd2d 274 (1969), the United States Supreme Court recognized that "[a] plea of guilty is more than an admission of conduct; it is a conviction." Therefore, it is critical not only that a defendant be advised of his rights relating to self-incrimination, trial by jury, and confrontation, but also that the defendant intentionally relinquish or abandon known rights. *Id.* at 243 n5, 89 SCt at 1712 n5, 23 LE2d 274 (citing Johnson v. Zerbst, 304 US 458, 464, 58 SCt 1019, 1023, 82 LEd 1461 (1938)). The Court stated, "Several federal constitutional rights are involved in a *waiver* that takes place when a plea of guilty is entered in a state criminal trial." *Id.* at 243, 80 SCt at 1712, 23 LEd2d 274 (emphasis added). "We cannot presume a waiver of these three important federal rights from a silent record." *Id.* "[T]he record must *affirmatively show* the plea was voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant explicitly waived the constitutional right against compulsory self incrimination, the right to trial by jury, and the right to confront one's accusers." State v. Goodwin, 2004 SD 75, ¶23, 681 NW2d 847, 855 (Konenkamp, J., concurring specially) (emphasis added) (citing *Boykin*, 395 US at 243-44, 89 SCt at 1712, 23 LEd2d 274; Nachtigall v. Erickson, 85 SD 122, 128, 178 NW2d 198, 201 (1970)).

[¶11.] Although *Boykin* "'does not require the recitation of a formula by rote or the spelling out of every detail by the trial court,'" *Nachtigall*, 85 SD at 128, 178

NW2d at 201 (quoting *In re* Tahl, 460 P2d 449, 456 (Cal 1969), *superseded by statute on another ground,* People v. Carty, 110 CalApp4th 1518, 1524-25 (2003)), "'the record *in some manner* [must] show[ ] the defendant entered his plea understandingly and voluntarily.'" Quist v. Leapley, 486 NW2d 265, 267 (SD 1992) (quoting Logan v. Solem, 406 NW2d 714, 717 (SD 1987)) (emphasis in original). Furthermore, "[t]he trial court must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted."[1] State v. Apple, 2008 SD 120, ¶10, 759 NW2d 283, 287 (citing State v. Sutton, 317 NW2d 414, 416 (SD 1982)). *See also* Piper v. Weber, 2009 SD 66, ¶16, ___ NW2d ___. "A silent record is not sufficient." *Nachtigall,* 85 SD at 128, 178 NW2d at 201.

> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

*Boykin,* 395 US at 243-44, 89 SCt at 1712-13, 23 LEd2d 274 (internal citations omitted).

[¶12.]     In determining whether a plea is voluntary, we consider the "totality of the circumstances." *Apple,* 2008 SD 120, ¶14, 759 NW2d at 288 (citing *Goodwin,*

---

1.     SDCL 23A-7-5 (Rule 11(d)) sets forth an appropriate procedure for the circuit court to ascertain the voluntary nature of a guilty or no contest plea. Failure to formally follow this specific statute, however, does not provide a constitutional violation as a basis for habeas corpus relief. It may be grounds for a direct appeal.

2004 SD 75, ¶11, 681 NW2d at 852). "In addition to the procedure and in-court colloquy, we look at other factors including 'the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.'" *Id.* (citation omitted).

[¶13.] In the instant case, the prior advisement of rights does not relieve the sentencing court of its obligation to inquire into and determine that the plea was voluntary. The sentencing court failed to make critical inquiries and determinations when the inquiries were most significant–when Monette changed his not guilty plea to a plea of no contest. The voluntariness of a plea is of the utmost importance when an accused enters a guilty or no contest plea. "If a plea is not intelligent and voluntary, it has been obtained in violation of due process and is void." *Nachtigall*, 85 SD at 126, 178 NW2d at 200.

[¶14.] The issue in this case is not whether Monette's plea was knowing. Monette had been fully advised of his constitutional rights just seven days earlier. Under our precedent, this time span alone does not constitute a deprivation of constitutional rights. *See* Stacey v. State, 349 NW2d 439 (SD 1984) (30-day interval); Clark v. State, 294 NW2d 916, 919-20 (SD 1980) (26-day interval). Instead, the issue is whether a record, noticeably silent on any inquiry into the voluntariness of a no contest plea, and thus no record of an effective waiver of federal constitutional rights, renders the plea unconstitutional. *Boykin* holds it does.

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state

criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 US 1, 84 SCt 1489, 12 LEd2d 653 (1964). Second, is the right to trial by jury. Duncan v. Louisiana, 391 US 145, 88 SCt 1444, 20 LEd2d 491 (1968). Third, is the right to confront one's accusers. Pointer v. Texas, 380 US 400, 85 SCt 1065, 13 LEd2d 923 (1965). We cannot presume a waiver of these three important federal rights from a silent record.

*Boykin*, 395 US at 243, 89 SCt at 1712, 23 LEd2d 274.

[¶15.] No inquiry was made by the sentencing court to determine if the plea was coerced or influenced by threats or promises. The record fails to establish that Monette voluntarily entered his plea of no contest, and that he waived his constitutional rights against self-incrimination, to confront witnesses, and to a jury trial as set forth in *Boykin*.[2]

[¶16.] The petitioner in a habeas action carries the burden of proving an involuntary plea and that his constitutional rights were violated. *Nachtigall*, 85 SD at 132, 178 NW2d at 203. At the habeas trial, Monette testified in support of various issues we determine to be without merit. He did, however, testify at the habeas trial that his plea before the sentencing court was coerced. The sentencing court record is silent on this critical step in the procedure. The habeas court had no

---

2.      We do not ignore that Monette signed a declaration of intent and an advisement of rights three days prior to the change of plea hearing. Those documents were entered as exhibits in the habeas trial. However, the documents were neither presented to the sentencing court nor were the provisions relating to the voluntariness of the plea read on the record or inquired into by the sentencing court. Furthermore, nothing in the record indicates the sentencing court read or relied upon these documents before accepting Monette's plea. Thus, the documents could not provide a basis for the sentencing court to determine, at the time Monette entered his no contest plea, that he was doing so voluntarily and that he was not coerced.

basis on a silent record from the sentencing court to determine by a preponderance of the evidence that the plea was voluntary and was a waiver of constitutional rights when it was entered. As this critical step is missing, we need not consider the additional factors under the totality of the circumstances analysis.

[¶17.]		Consequently, we determine that the habeas court erred in concluding that Monette voluntarily entered his plea. We further remand to the habeas court with direction to void the plea and remand to the sentencing court for further proceedings in accordance with this decision and SDCL ch. 21-27.

[¶18.]		We find the second and third issues raised by Monette to be meritless.

[¶19.]		GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.