WILBUR, Justice.
[¶ 1.] Terry Oleson pleaded guilty to first-degree rape. Oleson petitioned for habeas relief and argued that his plea was unconstitutional because the sentencing court did not properly advise him of his right against self-incrimination or that a guilty plea would waive that right. The *454 habeas court found that Oleson was properly advised of his constitutional rights. We affirm.
Background
[¶2.] Oleson was charged by indictment on November 29, 2007, with first-degree rape, third-degree rape, and sexual contact with a child under 16 years of age. SDCL 22-22-1(1), -1(3), -7. The State filed a part II habitual offender information. Oleson was arraigned by the Honorable Bradley G. Zell and was advised of his rights, including but not limited to, all three Boykin rights. During arraignment, the court specifically advised Oleson of his right against self-incrimination; but the court did not advise him that a plea of guilty would waive that right.
[⅜ 3.] Oleson agreed to plead guilty to first-degree rape in exchange for the dismissal of the remaining charges and the part II information. The court canvassed Oleson at the change-of-plea hearing individually as to his statutory and constitutional rights. Notably, and for purposes of this appeal, the court did not canvass Ole-son as to his right against self-incrimination; nor did the court advise him that a guilty plea would waive this right:
COURT: Do you understand by entering a guilty plea, you are giving up certain constitutional and statutory rights?
OLESON: Yes, Your Honor.
COURT: You’re giving up the right to have a jury trial in relation to these charges?
OLESON: Yes, Your Honor.
COURT: You’re giving up your right to confront and cross-examine witnesses in relation to these charges?
OLESON: Yes.
COURT: You’re giving up your right to call witnesses on your own behalf?
OLESON: Yes, Your Honor.
COURT: You’re giving up your right to make the State prove beyond a reasonable doubt all of the elements of the offense charged against you?
OLESON: Yeah.
COURT: You’re waiving your presumption of innocence by pleading guilty. Do you understand that?
OLESON: Yes.
COURT: Have you had enough time to discuss this matter with your attorney[?] OLESON: Yes, Sir.
COURT: Are you currently under the influence of any alcoholic beverage or controlled drug or substance?
OLESON: No.
[¶ 4.] The sentencing court sentenced Oleson to 70 years in the South Dakota State Penitentiary. Oleson did not file a direct appeal of his conviction or sentence. About five years later, on January 20, 2012, Oleson filed a petition for habeas relief. Oleson alleged (1) that the sentencing court failed to advise him of his right against self-incrimination, (2) the court failed to establish the voluntariness of his plea, (3) the court failed to establish a factual basis for his plea, and (4) that he received ineffective assistance of counsel. The habeas court issued findings of fact, conclusions of law, and an incorporated memorandum opinion. The habeas court concluded that the record reflected that Oleson was aware at the time of his guilty plea that his rights included the right against self-incrimination, and that he understood that he was waiving all of his constitutional and statutory rights including, but not limited to, all three Boykin rights. Consequently, the court denied Oleson’s writ for habeas corpus relief. The habeas court granted Oleson’s motion for certificate of probable cause, allowing him to appeal the issue of whether his guilty plea was a valid waiver of his privi *455 lege against self-incrimination. Oleson raises the following issue for our review:
Whether the habeas court erred in finding that Oleson’s plea was constitutional.
Standard of Review
[¶5.] Habeas corpus “is a collateral attack on a final judgment.” Monette v. Weber, 2009 S.D. 77, ¶ 6, 771 N.W.2d 920, 923 (quoting Owens v. Russell, 2007 S.D. 3, ¶ 6, 726 N.W.2d 610, 614-15). Accordingly, “habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.” McDonough v. Weber, 2015 S.D. 1, ¶ 15, 859 N.W.2d 26, 34 (quoting Flute v. Class, 1997 S.D. 10, ¶ 8, 559 N.W.2d 554, 556).[1] “The petitioner must ‘prove he is entitled to relief by a preponderance of the evidence.’” Id. (quoting Vanden Hoek v. Weber, 2006 S.D. 102, ¶ 8, 724 N.W,2d 858, 861-62). “‘Preponderance of the evidence’ is defined as ‘the greater weight of evidence.’ ” Pieper v. Pieper, 2013 S.D. 98, ¶ 22, 841 N.W.2d 781, 787 (quoting L.S. v. C.T., 2009 S.D. 2, ¶ 23, 760 N.W.2d 145, 151). “We review habeas factual findings under the clearly erroneous standard and legal conclusions under the de novo standard.” McDonough, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34 (quoting Meinders v. Weber, 2000 S.D. 2, ¶ 5, 604 N.W.2d 248, 252).
Analysis
[¶ 6.] When a criminal defendant enters a plea of guilty, the defendant waives three fundamental constitutional rights: “the privilege against compulsory self-incrimination,” “the right to a trial by jury,” and “the right to confront one’s accusers.” Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). The United States Supreme Court stated in Boykin that, because a criminal defendant waives these three fundamental rights by pleading guilty, “an accused facing ... imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.” Id. at 243-44, 89 S.Ct. at 1712. The Supreme Court proclaimed that it “cannot presume a waiver of these three important federal rights from a silent record.” Id., quoted in Rosen v. Weber, 2012 S.D. 15, ¶ 8, 810 N.W.2d 763, 765. Similarly, we have stressed that “it is critical not only that a defendant be advised of his rights relating to self-incrimination, trial by jury, and confrontation, but also that the defendant intentionally relinquish or abandon known rights.” State v. Smith, 2013 S.D. 79, ¶ 8, 840 N.W.2d 117, 120 (quoting Monette, 2009 S.D. 77, ¶ 10, 771 N.W.2d at 924).
[¶ 7.] We have acknowledged, however, that “Boykin ‘does not require the recitation of a formula by rote or the spelling out of every detail by the trial court[.]’ ” Monette, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (quoting Nachtigall v. Erickson, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970)). “[S]pecific articulation of the Boykin rights'by the[1] trial judge is not an indispensable requisite for the record to *456 establish a valid plea.” Smith, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23 (quoting State v. Moeller, 511 N.W.2d 803, 810 (S.D.1994)). Rather, “if the record reflects that a Boykin canvassing occurred, we require only that the ‘record in some manner shows the defendant entered his plea understandingly and voluntarily.”’ State v. Bilben, 2014 S.D. 24, ¶ 11, 846 N.W.2d 336, 339 (quoting Quist v. Leapley, 486 N.W.2d 265, 267 (S.D.1992)). We applied a “two-step approach”[2] in Rosen and Monette to determine whether the record reflects that the defendant relinquished his rights. See id. ¶ 19, 846 N.W.2d at 340. We said in Rosen, “[T]he totality of the circumstances analysis is inapplicable when the record reflects that no canvassing regarding a Boykin waiver ever took place.” 2012 S.D. 15, ¶ 11, 810 N.W.2d at 766 (emphasis added). See also Monette, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926-27. “In the complete absence of a Boykin canvassing, a ‘critical step’ is missing and the reviewing court does ‘not consider the additional factors under the totality of the circumstances analysis.’ ” Bilben, 2014 S.D. 24, ¶ 14, 846 N.W.2d at 339 (quoting Rosen, 2012 S.D. 15, ¶ 11, 810 N.W.2d at 766).
[¶8.] There is no dispute in this case that the sentencing court did not advise Oleson during the change-of-plea hearing of his right against self-incrimination or that by entering a guilty plea he would waive that right. The first question, then, under the two-step approach in Mon-ette and Rosen is whether the absence of this advisement constitutes a “complete absence of Boykin canvassing” such that a “critical step” is missing. See id. Oleson argues that this case is analogous to our recent cases where we reversed and remanded for resentencing because we held that this first step was missing. See Bilben, 2014 S.D. 24, 846 N.W.2d 336; Rosen, 2012 S.D. 15, 810 N.W.2d 763; Monette, 2009 S.D. 77, 771 N.W.2d 920. However, our decisions in Monette, Rosen, and Bil-ben are factually distinguishable from the present case.
[¶ 9.] The issue in Monette was whether the plea entered was voluntary in the absence of “any inquiry into the voluntariness of a no contest plea, and thus no record of an effective waiver of federal constitutional rights[J” Monette, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926 (emphasis added). “No inquiry was made by the sentencing court to determine if the plea was coerced or influenced by threats or promises.” Id. ¶ 15. In addition, the “court failed to inquire if Monette waived his constitutional rights.” Id. ¶ 9, 771 N.W.2d at 924. The absence of that “critical step” led us to conclude that no further inquiry into the totality of the circumstances was necessary to determine that the plea was unconstitutional. Id. ¶ 16, 771 N.W.2d at 927.
[¶ 10.] In Rosen, we again considered whether the defendant’s plea was entered voluntarily and knowingly. The sentencing court did not advise Rosen that by pleading guilty “he would waive his right *457 against self-incrimination, his right of confrontation, and his right to a trial by jury.” 2012 S.D. 15, ¶ 14, 810 N.W.2d at 767. Nor did the court inquire of Rosen whether he “understood that he would waive those rights -by pleading guilty.” Id. Instead, the court merely advised the defendant that by pleading guilty he would waive his right to “a trial.” Id. ¶ 3, 810 N.W.2d at 764. We concluded that this was not sufficient. Id. ¶ 14, 810 N.W.2d at 767. The record did not reflect a knowing and voluntary waiver of the defendant’s Boykin rights, and, therefore, we did not analyze the totality of the' circumstances. Id.
[¶ 11.] In Bilben, the defendant collaterally attacked a prior conviction for driving under the influence because the sentencing court did not canvass Bilben regarding his waiver of his three Boykin rights. 2014 S.D. 24, ¶ 13, 846 N.W.2d at 339. Further, the record indicated that he did not receive any waiver advisement. Id. We held, “Because there was a complete absence of any Boykin waiver advisement ..., we do not apply the totality-of-the-circumstances analysis.” Id. ¶ 14 (emphasis added). Consequently, we reversed and remanded for resentencing.
[¶ 12.] The common thread in Monette, Rosen, and Bilben is the “complete absence” of any Boykin waiver advisement as to each defendant on the right against self-incrimination, the right to confront witnesses, and the right to a jury trial.[3] Therefore, an analysis of the totality of the circumstances would be a nullity. “The habeas court had no basis on a silent record from the sentencing court to determine by a preponderance of the evidence that the plea was [constitutionally sufficient].” Monette, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926. It follows that complete Boykin canvassing is a sufficient, but not a necessary, reason to examine the totality of the circumstances.
[¶ 13.] Here, while the sentencing court did not explain the right of self-incrimination to Oleson at the change-of-plea hearing, the court had previously explained this right to Oleson at arraignment.
COURT: You have the right against self-incrimination. What that means is, you have the right to plead not guilty, have the right to have the State prove beyond a reasonable doubt each and every element of the offense charged against you. You do not have to testify. You do not have to put on any evidence whatsoever, and if you choose not to testify or put on any evidence, neither the State nor that court can hold that against you.
We have recognized “that a deficiency in explaining the defendant’s rights at the time the defendant enters a guilty plea may be overcome with proof that the same judge had adequately explained the rights *458 at an earlier arraignment.” State v. Apple, 2008 S.D. 120, ¶ 16, 759 N.W.2d 283, 289. “The closer the arraignment explanation is to the guilty plea the more likely the defendant remembers the recitation of rights.” State v. Goodwin, 2004 S.D. 75, ¶ 17, 681 N.W.2d 847, 854. See also Garcia v. State, 2014 S.D. 5, ¶ 16, 843 N.W.2d 345, 351 (21-day interval); Monette, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926 (7-day interval); Stacey v. State, 349 N.W.2d 439, 441-42 (S.D.1984) (30-day interval); Clark v. State, 294 N.W.2d 916, 919-20 (S.D.1980) (26-day interval). The same judge in this case presided over arraignment and the change-of-plea hearing and adequately explained the right against self-incrimination at arraignment. Although 70 days elapsed between the two proceedings, the simple fact remains that Oleson was advised at arraignment regarding his right against self-incrimination. The question that arises, then, is whether the fact that Oleson was not advised that a guilty plea would waive this right deprived him of his constitutional right to due process such that relief is necessary.
[¶ 14.] The record reflects that the sentencing court specifically advised Oleson at the change-of-plea-hearing that a guilty plea would waive his other two Boykin rights. That is, the sentencing court advised Oleson of his right of confrontation and his right to a trial by jury, and that a guilty plea would waive these two rights. While the sentencing court at the change-of-plea hearing did not advise Oleson of his right against self-incrimination or that a guilty plea would waive that right at the change-of-plea hearing, “[s]pecific articulation of the Boykin rights by the trial judge is not an indispensable requisite for the record to establish a valid plea.” See Smith, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23 (quoting Moeller, 511 N.W.2d at 810). “Boykin ‘does not require the recitation of a formula by rote or the spelling out of every detail by the trial court[.]’ ” Monette, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (quoting Nachtigall, 85 S.D. at 128, 178 N.W.2d at 201). See also Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir.1974) (“Specific articulation of the Boykin rights is not the sine qua non of a valid guilty plea.... Boykin does not require specific articulation of the above mentioned three rights in a state proceeding.”); McChesney v. Henderson, 482 F.2d 1101, 1106 (5th Cir.1973) (“[N]o rule of criminal procedure was mandated by Boykin, and there is no express requirement that specific articulation of the three constitutional rights above mentioned be given to the accused at the time of the acceptance of a plea of guilty....”); Wade v. Coiner, 468 F.2d 1059, 1060 (4th Cir.1972) (footnote omitted) (“We agree that for the plea to stand [a defendant] must have been ‘fully aware of the direct consequences’ of his plea, but we reject the contention that under ... the Constitution ... [a defendant is] entitled to specific monition as to the several constitutional rights waived by entry of the plea.”), Therefore, the mere fact that the sentencing court did not explain the right against self-incrimination to Oleson at the change-of-plea hearing — a right that was explained in extensive detail at arraignment — and that a guilty plea would waive this right does not render the record silent, see Rosen, 2012 S.D. 15, ¶8, 810 N.W.2d at 765; nor can it be described as a complete absence of canvassing, see Bilben, 2014 S.D. 24, ¶ 13, 846 N.W.2d at 339.
[¶ 15.] We therefore examine the totality of the circumstances to determine whether Oleson entered a voluntary and knowing guilty plea. To determine whether a guilty plea is voluntary and knowing “as required to satisfy due process requirements, we must look to the ‘totality of the circumstances.’ ” Apple, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288 (quoting Goodwin, *459 2004 S.D. 75, ¶ 11, 681 N.W.2d at 852). “In addition to the procedure and in-court colloquy, we look at other factors including ‘the defendant’s age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.’” Monette, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925 (quoting Apple, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288). Here, Oleson argues simply that he did not knowingly enter his plea because the sentencing court did not advise him that pleading guilty would waive his right against self-incrimination. In contrast, the following facts weigh heavily in favor of Oleson entering his plea knowingly and voluntarily: Oleson was 42 years old at the time he pleaded guilty; he was represented, by counsel; he pleaded guilty according to the terms of a plea agreement; the circuit court advised Ole-son of his right against self-incrimination at arraignment only -two months prior; and, most significantly, Oleson entered guilty pleas in no fewer than six previous criminal prosecutions.
[¶ 16.] Other circumstances also support the conclusion that Oleson knowingly entered his plea. At Oleson’s change-of-plea hearing, the sentencing court said, “Do you understand by entering a guilty plea, you are giving up certain constitutional and statutory rights?” The sentencing court then proceeded to ask Oleson if he understood that pleading guilty would waive his. rights to a jury trial and to confront adverse witnesses. It is difficult to conclude that an adult defendant — one represented by counsel and well-versed in the consequences of pleading guilty — did not understand' that pleading guilty and pleading not guilty were mutually exclusive. The sentencing court’s reference to two of the three Boykin rights that had been previously explained to Oleson at Oleson’s arraignment lends further support to the conclusion that the sentencing court’s reference to “certain constitutional and statutory rights” informed Oleson that pleading guilty would also waive his right against self-incrimination. Consequently, the habeas court did not err when it concluded that Oleson failed to establish by a preponderance of the evidence that he did not knowingly and voluntarily enter his plea.
[¶ 17.] Affirmed.
[¶ 18.] ZINTER, Justice, and KONENKAMP, Retired Justice, concur.
[¶ 19.] GILBERTSON, Chief Justice, concurs in result.
[¶ 20.] SEVERSON, Justice, concurs with a writing.
[¶ 21.] KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.

. In two recent habeas corpus appeals to this Court, we considered the issue whether the record demonstrated that the defendant entered a constitutionally sufficient guilty plea. Rosen v. Weber, 2012 S.D. 15, 810 N.W.2d 763 (holding that the record did not establish that defendant knowingly and voluntarily waived his Boykin rights); Monette, 2009 S.D. 77, 771 N.W.2d 920 (holding that the record did not establish that defendant voluntarily waived his Boykin rights).

. The majority opinion in Bilben recognized that the dissent “present[ed] a compelling argument that our case law, addressing alleged Boykin violations, has incorrectly strayed from a totality-of-the-circumstances analysis toward the two-step approach applied in Ro-sen and Monette." 2014 S.D. 24, ¶ 19, 846 N.W.2d at 340. We stated, however, that "we must wait for another day to address this matter” because "the State has not asked us to reconsider our case law declining to apply totality analysis when no waiver advisement has been given.” Id. Similarly, the State in this case does not request that we reconsider our case law. We therefore adhere to the precedent in Rosen and Monette, "awaiting a proper case in which we can also consider the arguments against the positions argued by [Chief Justice Gilbertson].” See id.

. The habeas court and the State further relied on Merrill v. State, 87 S.D. 285, 206 N.W.2d 828 (1973), for the proposition that the failure to advise Oleson of his right against self-incrimination did not render the plea invalid. In Merrill, “the sentencing court failed to specifically advise petitioner of his constitutional right against self-incrimination.” Id. at 286, 206 N.W.2d at 829. We held "that the court’s failure to do so [did] not vitiate the plea where the post-conviction proceedings clearly show that the petitioner was aware of his constitutional rights and that he understood those rights at the time he entered his guilty plea.” Id. at 291, 206 N.W.2d at 831. While the underlying premise in Merrill is similar to the present case — i.e, the mere failure to advise the criminal defendant on one of three Boykin rights does not, by itself, vitiate a guilty plea — we acknowledge that Merrill was decided under the terms of the now-repealed Post-Conviction Relief Act, see SDCL chapter 23-52. Id. at 286, 206 N.W.2d at 829. Therefore, Merrill is not applicable to this case.