GILBERTSON, Chief Justice
(concurring in result).
[¶ 22.] As it did in Bilben, 2014 S.D. 24, 846 N.W.2d 336, the Court today declines to revisit the propriety of the two-step approach that evolved out of Monette, 2009 S.D. 77, 771 N.W.2d 920, and that the Court adopted in Rosen, 2012 S.D, 15, 810 N.W.2d 763. See supra ¶ 7 n. 2. Although I concur in the Court’s decision to deny Oleson habeas relief, I write separately because I adhere to my dissenting opinions in Rosen and Bilben. The two-step approach to reviewing the constitutionality of a defendant’s guilty plea employed in those cases and by the Court today equates the absence of a Boykin canvassing with the absence of evidence establishing the volun-tariness of a. plea. Furthermore, although the Court reaches the correct result today, it does so by applying this two-step ap *460 proach in contravention of the long-standing burden of proof imposed on habeas petitioners.
Analysis
[¶ 23.] 1. The two-step approach equates the absence of a Boykin canvassing with the absence of evidence establishing voluntariness.
[¶ 24.] Quoting Rosen, 2012 S.D. 15, ¶ 11, 810 N.W.2d at 766, the Court today says, “The totality of the circumstances analysis is inapplicable when the record reflects that no canvassing regarding a Boykin waiver ever took place.” See supra ¶ 7. Although I acknowledge that we have been consistently divided on the issue since Rosen, I continue to reject the Court’s “recent direction taken ... away from a totality-of-the-circumstances review of guilty, pleas and toward a two-step approach[.]” Bilben, 2014 S.D. 24, ¶ 35, 846 N.W.2d at 345 (Gilbertson, C.J., dissenting). This approach is inconsistent with Boykin itself, as well as our own cases prior to Monette.
,[¶ 25.] In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United. States Supreme Court identified “[s]everal federal constitutional rights ,.. involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial.” Id. at 243, 89 S.Ct. at 1712. These include the right against self-incrimination, the right to a jury trial, and the right of confrontation. Id. A court may not “presume a waiver of these three important ... rights from a silent record.” Id. However, “Boykin does not require specific articulation of the above mentioned three rights in a state proceeding.” ■ Wilkins, 505 E.2d at 763; see also Wade, 468 F.2d at 1060 (“[W]e reject the contention that under ... the Constitution ... [a defendant is] entitled to specific monition as to the several constitutional rights waived by entry of the plea.”). In other words, “no rule of criminal procedure was mandated by Boykin, and there is no express requirement that specific articulation of the three constitutional rights above mentioned be given to the accused at the time of the acceptance of a plea of guilty[.]” McChesney, 482 F.2d at 1106. Instead, a circuit court’s acceptance of a defendant’s guilty plea should be upheld if the “record affirmatively show[s] that the plea was knowing and voluntary.” See Parke v. Raley, 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992) (emphasis added). Such a determination is made “by considering all of the relevant circumstances.” Willbright v. Smith, 745 F.2d 779, 780 (2d Cir.1984) (per curiam) (citing Brady v. United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)).
[¶26.] Our own case law largely mirrors the federal analysis. Although the complete absence in the record of “any inquiry into the voluntariness [or knowingness] of a [guilty] plea ... renders the plea unconstitutional!,]” Monette, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926, “specific articulation of the Boykin rights by the trial judge is not an indispensable requisite for the record to establish a valid plea[,]” State v. Beckley, 2007 S.D. 122, ¶ 10, 742 N.W.2d 841, 844 (quoting Moeller, 511 N.W.2d at 810). “The Boykin advisements are not the only mechanism by which a plea taking court can insure the intelligent entry of a guilty plea.” Quist, 486 N.W.2d at 267. “It is sufficient when the record in some manner shows the defendant entered his plea understanding^ and • voluntarily!, ]” Beckley, 2007 S.D. 122, ¶ 10, 742 N.W.2d at 844 (quoting Moeller, 511 N.W.2d at 810); i.e., when the record demonstrates “that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea[,]” Nacht *461 igall, 85 S.D. at 128, 178 N.W.2d at 201 (emphasis added) (quoting In re Tahl, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449, 456 (1970) (en banc)). Thus, for decades, “[i]n determining whether a plea [was] voluntary, we considered] the ‘totality of the circumstances.’” Monette, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925 (quoting Apple, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288).
[¶27.]. In 2009, this Court diverged from Beckley, Moeller, Quist, Nachtigall, and other similar cases in our Rosen decision. In Rosen, we reviewed the constitutionality of a guilty plea entered by a defendant who “was not advised or asked whether he understood that by pleading guilty he would waive his right to trial by a jury, his right to compulsory process, and his right against self-incrimination.” 2012 S.D. 15, ¶ 3, 810 N.W.2d at 764.' This Court determined that “by accepting the ... plea without a Boykin canvassing, ‘the sentencing court failed to make critical inquiries and determinations when the inquiries were most significant — when the defendant changed his not guilty plea to a plea of guilty.’ ” Id. ¶ 9, 810 N.W.2d at 766 (quoting Monette, 2009 S.D. 77, ¶ 13, 771 ’ N.W.2d at 925-26). Because the circuit court had not fully canvassed the defendant regarding his Boykin rights, this Court declined to determine whether the defendant’s plea was actually entered knowingly and voluntarily under the totali- • ty-of-the-circumstances. Id. ¶ 11, 810 N.W.2d at 766 (quoting Monette, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926-27).
[¶ 28.] At the heart of our ongoing disagreement is a misperception of our historical approach to reviewing the constitutionality of a plea: that a totality-of-the-cireumstances analysis is not appropriate when the record is silent regarding the voluntariness of a plea. The better view is that such analysis is appropriate in every case, whether silent regarding a Boykin canvassing or voluntariness in general. On one hand, consider a totality-of-the-circumstanees analysis in the absence of relevant circumstances — i.e., the totality of no circumstances. On the other hand, consider the refusal to conduct such analysis because of a record silent on voluntariness. When there are no circumstances establishing voluntariness to consider, the result in either case is the same: the impossibility of concluding that the plea was entered knowingly and voluntarily. While the result is the same, however, this artificial distinction and its resulting conditional application of totality analysis opened the door to equating the absence of evidence establishing voluntariness with the absence of canvassing on Boykin rights. Although the presence or absence of a Boykin canvassing is certainly relevant to the ultimate determination of voluntariness — and in some cases, may be very persuasive— such evidence is merely one circumstance among the totality that might establish that a defendant knowingly and voluntarily pleaded guilty.
[¶29.] In Bilben, this Court conceded that “[t]he dissent ... ■ presents a compelling argument that our case law, addressing alleged Boykin violations, has incorrectly strayed from a totality-of-the-circumstances analysis toward the two-step approach applied in Rosen and Monette.” 2014 S.D. 24, ¶ 19, 846 N.W.2d at 340. Nevertheless, the Court declined to abandon the two-step approach in order to “awaitf ] a proper case in which [the Court] can also .consider the arguments against the- positions argued by the dissent.” Id. The Court takes the same position today. See supra ¶ 7 n. 2. However, this case is distinguishable from Bilben: while Bilben necessarily did not have the opportunity to respond to arguments raised in that dissent, Oleson has had such an opportunity. Additionally, the State raised the is *462 sue in this case. Quoting Smith, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23, the State argues in its brief that “[slpecifíc articulation of the Boykin rights by [the] trial judge is not an indispensable requisite for the record to establish a valid plea.” Again quoting Smith, 2013 S.D. 79, ¶ 14, 840 N.W.2d at 122-23, the State continues, “Instead, ‘the record in some manner must show the defendant entered his plea understanding^ and voluntarily/ ” Finally, citing Monette, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925, the State argues that the totality of the circumstances should “determine whether Oleson understood that he was waiving all three Boykin rights by entering a plea of guilty[.]” This analysis stands in stark contrast to the two-step approach articulated by this Court in Rosen, where it said, “[WJhen there is no record showing that the sentencing court conducted a Boykin canvassing, the habeas court has no basis upon which it may find that the sentencing court obtained a voluntary and valid waiver of the defendant’s Boy-kin rights.” Rosen, 2012 S.D. 15, ¶ 10, 810 N.W.2d at 766 (emphasis added). Thus, even if it doesn’t explicitly ask, “Will you reconsider Rosen” the State clearly invites us to revisit the issue by attacking the substance of the two-step approach.
[¶ 30.] Furthermore, there is no indication in Monette or Rosen that the defendants in those cases explicitly asked the Court to reconsider 40 years of prior cases — such as Beckley, Moeller, Quist, Nachtigall, and others dating back to Boy-kin — that consistently affirmed our use of the totality-of-the-circumstances analysis in cases like this. Notably, we never overruled these prior cases. Therefore, an abandonment of the two-step approach would be, at worst, an unrequested correction to an unrequested deviation. I see little point in continuing to wait for the State to formally request that we resolve a conflict in case law of our own making.
[¶31.] Despite my disagreement with the Court’s application of the two-step approach in this case, I agree with the Court’s conclusion that the totality of the circumstances makes clear that Oleson understood pleading guilty would waive his right against self-incrimination.
[¶32.] 2. The Court applies a lower burden of proof than that normally required of a habeas petitioner.
[¶ 33.] We have consistently stressed that “we limit our review of a habeas appeal ‘because it is a collateral attack on a final judgment.’ ” McDonough, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 33-34 (quoting Van-den Hoelt, 2006 S.D. 102, ¶ 8, 724 N.W.2d at 861). Habeas corpus “deals only with such radical defects as render the proceeding or judgment absolutely void.” Acker v. Adamson, 67 S.D. 341, 347, 293 N.W. 83, 85 (1940) (emphasis added). As such, “habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.” McDonough, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34 (emphasis added) (quoting Flute, 1997 S.D. 10, ¶ 8, 559 N.W.2d at 556). Mere “[ejrrors and irregularities in the proceedings of a court having jurisdiction of the person, subject matter and power to decide questions of law, are not reviewable though they may have been grounds for reversal on direct appeal.” State ex rel. Ruffing v. Jameson, 80 S.D. 362, 366, 123 N.W.2d 654, 656 (1963).
[¶ 34.] Even if habeas review is appropriate in this case,[4] the Court’s application
*463 of the two-step approach contravenes the burden of proof established for habeas actions. “[T]he judgment of a court carries with it a presumption of regularity.” Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938). As the Court notes, it is Oleson who is required to “prove he is entitled to relief by a preponderance of the evidence.” McDonough, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34 (emphasis added) (quoting Vanden Hoek, 2006 S.D. 102, ¶ 8, 724 N.W.2d at 861-62); see also Monette, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926 (“The petitioner in a habeas action carries the burden of proving an involuntary plea and that his constitutional rights were violated.” (emphasis added)). “Where a defendant ... acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right....” Johnson, 304 U.S. at 468-69, 58 S.Ct. at 1025. Yet, under the burden of proof applied by the Court today, “the defendant can ... prevail by alleging that the judge failed to utter specific advisements, regardless of the surrounding circumstances and without claiming actual coercion or misunderstanding or ignorance of the rights being waived.” Bilben, 2014 S.D. 24, ¶ 37, 846 N.W.2d at 346 (Gilbertson, C.J., dissenting).
[¶ 35.] Although the lack of a Boykin canvassing can certainly evidence an unknowing plea, such evidence is not disposi-tive unless it constitutes “the greater of weight of evidence.” L.S. v. C.T., 2009 S.D. 2, ¶ 23, 760 N.W.2d 145, 151 (quoting Gross v. CT Mut. Life Ins. Co., 361 N.W.2d 259, 269 (S.D.1985)) (defining the preponderance standard). It is not sufficient that a circuit court fails to advise a defendant that pleading guilty will waive his rights against self-incrimination, to a jury trial, and to confrontation; in an appropriate habeas petition, a petitioner must instead prove by a preponderance that his plea, in actuality, was not knowing. Thus, while the Court reaches a totality-of-the-circumstances analysis in the present case, it does so only because it concludes there was not “a complete absence of canvassing.” See supra ¶ 14. The same analysis — applied in a subsequent habeas petition — would grant relief to a petitioner able to prove the absence of a complete Boykin canvassing, even if the greater weight of evidence proves he knowingly entered his plea.
[¶ 36.] Even if I generally agreed with the two-step approach, the Court’s application of it in this case is inapposite because this is a habeas action and not a direct appeal. The Court’s analysis should be as simple as this: Oleson’s simple assertion that the circuit court failed to inform him of the individual effect of waiving his right against self-incrimination does not estab- *464 • lish by the greater weight of evidence that he did not knowingly enter his plea. Therefore, granting habeas relief is not appropriate.
Conclusion
[¶37.] Our pre-Rosen decisions firmly establish that a Boykin canvassing is not a necessary condition of conducting a totali'ty-of-the-circumstances analysis as the Court maintains. Beckley, 2007 S.D. 122, ¶ 10, 742 N.W.2d at 844 (quoting Moeller, 511 N.W.2d at 810); Quist, 486 N.W.2d at 267. However, I agree that the greater weight of evidence tends to show that Ole-son was fully aware of the consequences of pleading guilty and the rights he would waive in doing so, regardless of any asserted deficiency in the circuit court’s script. Consequently, Oleson has not met his burden as a habeas petitioner of proving by a preponderance of the evidence that he did not knowingly waive his right against self-incrimination. Therefore, I concur in result.

. As the Court points out, we have previously entertained habeas appeals involving chai- *463 lenges to the constitutionality of guilty pleas. However, entertaining a habeas appeal is not synonymous with holding that the content of the appeal is the proper subject of a habeas petition. Moreover, whether habeas corpus is appropriate is highly dependent on the facts of each individual case. ‘‘[W]e look at the full course of the proceeding which culminated in the challenged judgment of conviction to ascertain whether, when so viewed as a whole, it can reasonably be said that it so offends against the settled notions of fairness and justice ... as to fail to amount to due process of law.” State ex rel. Baker v. Jameson, 72 S.D. 638, 644, 38 N.W.2d 441, 444 (1949) (emphasis added). In Rosen and Monette, the State only answered the petitioners' arguments on the merits; the State did not further assert that habeas relief was inappropriate because the error — if there was any — did not rise to the level of a jurisdictional defect. Likewise, the State has not raised this argument in the present case.