SEVERSON, Justice
(concurring).
[¶ 38.] In this Writ of Habeas Corpus proceeding Oleson contends that he was not specifically advised of his right against self-incrimination at his plea hearing on February 13, 2008, and from this he argues he did not waive his rights, which constituted a constitutional rights violation sufficient to deny the court jurisdiction and warrant the habeas writ.
[¶ 39.] This Court has on many occasions addressed the necessity for the record to show that a guilty plea has been made voluntarily and knowingly as addressed by Boykin, 395 U.S. 238, 89 S.Ct. 1709. Our decisions include the often cited cases of Apple, Goodwin, Logan, and Nachtigall, Apple, 2008 S.D. 120, 759 N.W.2d 283; Goodwin, 2004 S.D. 75, ¶ 11, 681 N.W.2d at 852; Logan v. Solem, 406 N.W.2d 714 (S.D.1987); Nachtigall, 85
S.D. 122, 178 N.W.2d 198. More recently the cases of State v. Woodard and Smith have addressed the issue. 2014 S.D. 39, 851 N.W.2d 188, 2013 S.D. 79, 840 N.W.2d 117. I do not agree that in Monette we adopted a two-step approach in determining whether a plea is knowing and voluntary. See Bilben, 2014 S.D. 24, ¶ 19, 846 N.W.2d at 340; Rosen, 2012 S.D. 15, ¶ 9, 810 N.W.2d at 766. Monette did not establish a two part analysis, nor did Boykin.
[¶ 40.'] Monette does not require specific articulation of the three rights noted in Boykin as “there is no constitutional requirement that the trial court employ a particular litany to validate a guilty plea.” Stacey v. Solem, 801 F.2d 1048, 1050 (8th Cir.1986). What we must examine is whether the record as a whole shows a voluntary and intelligent plea with knowledge of the consequences and waiver of federal constitutional rights. The United States Court of Appeals for the First Circuit aptly described the duties of trial courts and appellate courts when accepting and reviewing pleas when it stated:
With scant recognition of its dual audience, Boykin simultaneously speaks to judges who accept guilty pleas and judges who later review challenges to the constitutional adequacy of those pleas, either on direct appeal or in collateral proceedings. Boykin reminds trial judges that a defendant’s plea of guilty “must be based on a ‘reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.’ ” Boykin reminds judges reviewing challenges to the constitutional adequacy of a plea proceeding that due process requires that the record of the proceeding contain sufficient evidence to support the trial court’s decision to accept the plea. [Boykin, 395 *465 U.S.] at 243, 89 S.Ct. [at 1712] (“We cannot presume a waiver ... from a silent record.”); see Brady v. United States, 397 U.S. 742, 747 n. 4, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (“The new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.”).
United States v. Ward, 518 F.3d 75, 81 (1st Cir.2008) (citations omitted) (footnotes omitted).
[¶ 41.] The failure to advise on waiver of a Boykin right is not necessarily a silent record establishing a constitutionally infirm plea. We have explained: “Specific articulation of the Boykin rights by the trial judge is not an indispensable requisite for the record to establish a valid plea.” Moeller, 511 N.W.2d at 810. “ ‘[T]he record in some manner must show the defendant entered his plea understandingly and voluntarily.’ ... ‘[T]he trial court must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted.’ ” Monette, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (citations omitted). Our totality-of-the-circumstances approach considered, “[i]n addition to the procedure and in-court colloquy, ... other factors including ‘the defendant’s age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.’ ” Monette, 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925 (quoting Apple, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288); see also Goodwin, 2004 S.D. 75, ¶ 11, 681 N.W.2d at 852.
• [¶42.] In this habeas action, Oleson does not contend that he was coerced in any manner into pleading guilty. Instead, he contends that failure by the court to specifically state that he would be waiving his right to self-incrimination by pleading guilty is an error which in itself renders his plea unconstitutional. The circuit court, when a plea was entered, asked if Oleson understood that, “by entering a guilty plea, you are giving up certain constitutional and statutory rights?”. Oleson responded “Yes.” The court specifically inquired into whether Oleson was giving up the right to: a jury trial, confronting and cross-examining witnesses, calling witnesses, making the State prove all elements of the offense beyond a reasonable doubt, and his presumption of innocence. At arraignment he was given a full advisement of rights. This is not the completely silent record which we encountered in Monette, where there was no inquiry as to the voluntariness of the plea or waiver of rights. Monette, 2009 S.D. 77, ¶ 15, 771 N.W.2d at 926. I
[¶43.] Further, in this habeas action Oleson carries the burden of proving that his plea was not knowing, intelligent, and voluntary. Due to the circuit court’s failure to specifically advise him that he was waiving his right regarding self-incrimination, Oleson contends that the plea was not voluntary and knowing. However, at the habeas trial[5] Oleson admitted he knew he would be required to talk about the facts in the case with the court and answer questions from the person writing the pre- *466 sentence investigation.[6] Therefore, I concur.

. Regarding a habeas action, the ninth circuit has held: "We hold, alternatively, that an evidentiary hearing in the district court is proper, if necessary, to determine if the plea of guilty by a State defendant is voluntarily and intelligently made, and that such a hearing does not violate the 'spirit' of Boykin." *466 Wilkins v. Erickson, 505 F.2d 761, 765 (9th Cir.1974).

. The following colloquy occurred:
The State: "So you knew that by pleading guilty you'd have to come in and talk about the facts of this case with the Judge?”
Oleson: "Yes.”
State: "All right. You knew that you’d have to admit to certain facts of this case in court?”
Oleson: "Yeah.”
State: "You knew that if you plead guilty you would be asked questions about what happened by the Court?”
Oleson: "Yes.”
State: "And you'd also be asked questions about what happened by the person writing that presentence report?”
Oleson: "Yes.”